UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ECOPETROL S.A. *et al.*, <br><br> Petitioners and Cross-Respondents, <br><br> v. <br><br> OFFSHORE EXPLORATION AND PRODUCTION LLC, <br><br> Respondent and Cross-Petitioner. | No. 1:14-cv-00529 (JGK) <br> Judge John G. Koeltl |

## CROSS-PETITION TO VACATE THE SUPPLEMENTAL INTERIM ARBITRAL AWARD

Respondent and Cross-Petitioner Offshore Exploration and Production LLC ("Offshore"), by undersigned counsel, hereby cross-petitions this Court to vacate the Interim Award Supplementing First Interim Award of April 2013 Requiring Claimant to Reimburse Respondents for VAT Taxes Pending Final Award on the Merits, dated December 1, 2013 (and issued to the Parties on December 3, 2013), (the "Supplemental Interim Award" or "SIA"), issued in favor of Petitioner and Cross-Respondent Ecopetrol S.A. and Korea National Oil Corporation ("collectively, "Purchaser") by an arbitral tribunal constituted under the International Centre for Dispute Resolution ("ICDR") of the American Arbitration Association ("AAA"), in the Parties' pending ICDR arbitration, Case No. 50 198 T 00825 11.

Offshore also opposes Purchaser's pending Petition to Confirm the Supplemental Interim Award, and an earlier April 16, 2013 Interim Award (or "IA," and together with the SIA, the "Interim Awards").

1

As detailed below and in Offshore's accompanying memorandum of law and the supporting declaration of David M. Orta (hereinafter "Orta Declaration" or "Orta Decl."), Offshore opposes confirmation of both Interim Awards on the basis that they are not final awards within the meaning of the Federal Arbitration Act ("FAA"), and therefore unavailable for judicial review.  In the event this Court were to conclude that the Interim Awards meet the test for finality necessary for judicial enforcement, then Offshore respectfully requests that the Court nevertheless deny confirmation of the SIA under Article V(1)(c) of the New York Convention on the Recognition and Enforcement of Foreign Arbitral Awards of June 10, 1058 (the "New York Convention"), as implemented by the FAA, 9 U.S.C. §§ 201 et seq., on the basis that the SIA was issued in excess of the arbitrators' powers.  Offshore also cross-petitions to vacate the SIA pursuant to the FAA, 9. U.S.C. 1 et seq., and Section 10(a)(4) thereof, which authorizes vacatur where arbitrators "exceeded their powers," and for manifest disregard of the law.[1]

True and correct copies of the Interim Awards, the applicable contracts, and other documents relevant to this application are attached to the Orta Declaration, and referred to by their "Ex." numbers herein.  In further support of this Cross-Petition, Offshore respectfully avers as follows:

**PARTIES**

1. Offshore is a private investment holding limited liability company organized under the laws of Delaware.  Its principal offices are in Houston, Texas.

---

[1] The Parties stipulated that Offshore would have until February 28, 2014 to put in its opposition to Purchaser's Petition to Confirm as well as any Cross-Petition to Vacate.  *See* Dkt. 9, at ¶ 2 (so ordered on February 10, 2014).  For the Court's convenience, Offshore has submitted just one memorandum of law addressing its arguments in opposition to the Petition to Confirm and in Support of its Cross-Petition to Vacate.

2. Ecopetrol is the national oil company of Colombia. It is organized under the laws of Colombia and its principal offices are in Colombia.

3. Korea National Oil Corporation is the national oil company of Korea. It is organized under the laws of Korea and its principal offices are in Korea.

## JURISDICTION AND VENUE

4. This proceeding arises under the New York Convention, as implemented by the FAA, 9 U.S.C. §  201 et seq.  The New York Convention applies to this proceeding because the Interim Awards that Purchaser seeks to have recognized and confirmed as a judgment of this Court, and the SIA which Offshore seek to vacate, arises out of a legal relationship that is considered as "commercial" and involves citizens of different countries.  9 U.S.C. § 202.

5. This Court has jurisdiction over the subject matter of this proceeding pursuant to 9 U.S.C. § 203.  Jurisdiction is also proper under 28 U.S.C. § 1332(a)(3) because this is an action between citizens of different States and in which citizens or subjects of a foreign state are parties. The amount in controversy exceeds $75,000, exclusive of interest and costs.

6. Venue is proper in this District pursuant 9 U.S.C. § 204 because the Parties agreed to New York County, New York as the place of arbitration (SPA, § 10.7)   and the Interim Awards were rendered in New York, New York, United States of America. (IA, at 9-11, SIA, at 10-11.)

7. Offshore's Cross-Petition to Vacate the Supplemental Interim Award is timely because it was made within three months (and within 90 days) after the date on which the SIA was delivered to the Parties, which was December 3, 2013. 9 U.S.C. §  12.

## BACKGROUND FACTS

8.      In December 2008, the Parties entered into a Stock Purchase Agreement (as amended, the "SPA") (Ex. 3), through which Purchaser acquired from Offshore an oil and gas exploration and production business, including the company now known as Savia Peru S.A. ("Savia").  In the SPA's amended § 2.3(b(i), the Parties agreed that $150 million of the $1.2 billion purchase price would be placed into escrow to cover potential tax and other indemnification liabilities.

9.      Release of funds from escrow was governed by a separate Indemnification Escrow Agreement (the "EA") (Ex. 4), dated February 5, 2009.  While the SPA contains, at § 10.7, an arbitration agreement, the EA does not.  To the contrary, the Parties herein (and Morgan Stanley, as Escrow Agent ("Agent")), expressly consented and "irrevocably waiv[ed] any objection" to the jurisdiction of the New York courts over disputes arising thereunder.  (Ex. 4, § 12.)  The parties also specified, via a "Supremacy Clause," that the EA must control in the event of any discrepancy or inconsistency between it and the SPA.  (*Id*.)

10.     Beginning in 2010, Purchaser asserted a series of claims against Offshore, eventually totaling $75.3 million, seeking indemnification for amounts that Savia had been assessed by the Peruvian tax authority ("SUNAT") for certain pre-acquisition tax liabilities for value added tax ("VAT"). (Ex. 5.)  Purchaser asserted its claims against the Escrow Account, and in each instance, took action under Section 3 of the EA to instruct the Agent to release to it corresponding amounts from escrow.  (*Id*.)  At the time, Offshore objected to the release of funds from escrow based on, *inter alia*, the fact that it was contesting the VAT liability due to Purchaser's breach of its obligations under the SPA to keep Offshore reasonably informed about and to tender control to it of the VAT tax contests.  (Ex. 6) Over three years after it was obligated to do so, Purchaser finally tendered partial control of the VAT contests to Offshore, who then

began to obtain reversals of the assessments. Those efforts have been extremely successful and, based on the outcomes to date in which three of the tax year assessments have been irrevocably reversed (to a legal finality) leading to the eventual reimbursement to Purchaser of all amounts paid to SUNAT, it appears likely that Savia will be entitled to reimbursements for the entire VAT payment for all years. (Orta Decl. ¶¶ 33-34.)

11. Offshore commenced arbitration in 2011 before the ICDR, seeking a declaration that it was not required to reimburse Purchaser for the VAT on the bases that Purchaser had breached its duties under the SPA to promptly cede control of the tax contests to Offshore and because the Peruvian courts would compel SUNAT to reimburse the amount that Savia paid, and Offshore would therefore ultimately owe Purchaser nothing. Ecopetrol then sought an interim order from the Tribunal requiring Offshore to make an indemnity payment to Purchaser for the VAT. (Ex 1, at 1.)

12. On April 15, 2013, the Tribunal issued its Interim Award, ordering Offshore to pay within 30 days the $75.3 million sought by Purchaser as reimbursement for the VAT taxes assessed and paid for the relevant tax years (Ex. 1) However, the Interim Award made clear that the Tribunal understood that significant issues concerning Offshore's ultimate responsibility, if any, for the VAT claims would be left for further adjudication. (*Id.* at 2-4, 7) On May 2, 2013, Offshore tendered payment to Purchaser, as ordered, by issuing written instructions to the Agent to release $75.3 million in escrowed funds to Purchaser. (Ex. 7.)

13. In order to effectuate this release, Offshore withdrew its former objections to the release of funds from escrow (Ex. 7), effectively returning the Parties to the situation contemplated under EA § 3, whereby Purchaser had made a demand for escrow release, without objection by Offshore, thus contractually requiring the Agent to release the requested funds.

(Ex. 4 § 3).  Offshore subsequently took the position that it was conceding liability for the VAT claims so as to ensure that the Agent would be deemed to have sufficient authority under the EA to release funds in satisfaction of the Interim Award.  Offshore, however, has made clear that this concession was without prejudice to its arguments that the Interim Awards are not "final" under the FAA for purposes of enforcement. (Ex. 10, at 10 n.22).  Further, Offshore does not concede that it must pay the VAT claims from new funds, as ordered in the SIA.  Offshore also argues that it should ultimately owe Purchaser nothing on these VAT claims, as it should be awarded offsets for any reimbursements Savia receives from SUNAT, and was permitted to introduce evidence on these points at the recent merits hearing. (Orta Decl. ¶ 33).

14. On May 10, 2013, Purchaser reversed course and instructed the Agent—contrary to Purchaser's earlier instructions—*not* to release to Purchaser escrow funds to satisfy Offshore's obligation under the Interim Award. (Ex. 8)  Purchaser instead demanded, in contradiction of the provisions governing escrow release in the EA and SPA, that Offshore make payment out of new funds, so that the amount of security in escrow (which Purchaser improperly sought to keep inviolate to secure other claims it is making in arbitration) would not be depleted.  (Ex. 9).

15. With Purchaser blocking the release of funds, and the Agent unwilling to act given Purchaser's objection (*see* §5(c) of EA), Offshore sought a judgment from this Court ordering the Agent to release the $75.3 million from escrow in accordance with the terms of the EA. (1:13-cv-03537 (JGK), Dkt. 1).  Although the EA contains the Parties' irrevocable consent to court jurisdiction for disputes involving the release of funds from escrow, Purchaser moved to stay or dismiss the action, in favor of the pending arbitration.  This Court granted Purchaser's motion, holding that it was for the arbitrators to determine "in the first instance" whether Offshore's claim was arbitrable, and if so, if its attempted tender of payment from escrow was

6

effective.  (1:13-cv-03537, Dkt. 62.)   Offshore has noticed an appeal from the Court's final December 23, 2013 judgment dismissing that action.  (1:13-cv-03537, Dkt. 64.)

16. Meanwhile, on June 3, 2013, well-past the mandatory 30-day deadline under ICDR Article 30 for actions to interpret or clarify arbitral awards, Purchaser requested that the Tribunal interpret its IA to require Offshore to pay the award from new funds. (Ex. 9.) Notwithstanding that the Tribunal was without jurisdiction under the ICDR Rules to adjudicate Purchaser's tardy application, and was acting in excess of the powers ascribed to it by the Parties' agreement in deciding a dispute over the Escrow Agreement, which the Parties had not contracted to arbitrate, on December 3, 2013, the Tribunal issued its SIA. (Ex. 2.)  In it, the Tribunal interpreted its Interim Award by directing that the Interim Award required Offshore to pay the $75.3 million from funds other than those in escrow when the Interim Award is *silent* on the manner by which Offshore must pay the award. (*ld.* at 7-8).  The Tribunal again expressly noted that significant issues bearing on this VAT claim remained for further adjudication.  (*Id*. at 1, 10.)

17. Offshore brought a timely petition under Article 30 of the ICDR Rules seeking, *inter alia*, that the Tribunal reconsider its decision to assume jurisdiction over this question of escrow release when it had no jurisdiction to do so under the EA or SPA, and was *functus officio* under the ICDR Rules, and requesting that the Tribunal rule on several matters that Offshore had presented to the Tribunal for resolution, but that the Tribunal had left undecided – including whether Section 3 of the EA entitled Offshore to a release from escrow in an amount equal to any amounts paid from fresh funds in satisfaction of the Interim Award. (Ex. 10.)  The Tribunal issued a Procedural Order, declining to make any further rulings. (Ex. 11.)

18. Over the past weeks, the Tribunal held hearings on the merits of the case in arbitration. These hearings are expected to conclude on March 12, 2014. At these hearings, issues relating to VAT were squarely in dispute and it is clear that the ultimate amount of liability and other issues concerning that claim remain in flux – including whether Purchaser breached its obligations to cede timely control of the VAT tax contests to Offshore; whether Offshore is entitled reimbursement for any amounts refunded to Savia; whether a final award on the VAT claims may be payable from escrow; and whether any damages, fees or interest is due Purchaser. (Orta Decl. ¶¶ 29-37.)

19. On January 28, 2014, Purchaser brought the instant action seeking confirmation of the Interim Awards. Offshore challenges confirmation of the Interim Awards and Cross-Petitions to Vacate the Supplemental Interim Award on three primary grounds. **First**, the Interim Awards, which expressly left open substantial issues relating to Purchaser's VAT claim for further adjudication, do not represent the Tribunal's final and conclusive determinations on a discrete and severable issue, and are thus not "final" awards within the meaning of the FAA, and are therefore unripe for judicial review. **Second**, the SIA should be denied confirmation under New York Convention Article V(1)(c) and vacated pursuant to FAA Section 10(a)(4) for the reason that the SIA was rendered in excess of the Tribunal's powers. Because the Parties did not agree to arbitrate disputes arising under or relating to the Escrow Agreement, and instead "irrevocably" waived any objection to and consented to the jurisdiction of the New York courts for all such disputes, the Tribunal impermissibly exceeded its powers by seizing jurisdiction over this dispute involving the release of funds from escrow. The Tribunal also exceeded its powers by acting on Purchaser's application to seek an interpretation of the Interim Award denoting the proper means of payment thereof, beyond the strict 30-day deadlines set forth in Article 30 of the

ICDR Rules.  **Third**, the SIA should be vacated for manifest disregard of the law, because by failing to give effect to (and functionally nullifying) the EA's "Supremacy Clause" in Section 12, which required the EA's judicial forum selection clause to prevail over the SPA's arbitration clause in the event of any inconsistency or discrepancy, the Tribunal disregarded clearly established principles of New York contract law leading to an erroneous outcome.  **Finally**, and in the alternative, even if this Court disagrees with Offshore's position that the Interim Awards are non-enforceable for the reasons above, the Court should remand the Interim Awards to the Tribunal, because the Tribunal failed to decide critical issues presented to it – *i.e.*, whether the dispute resolution clause in the EA is inconsistent or is discrepant with that of the SPA and whether pursuant to Section 3 of the EA, a payment by Offshore out of new funds in satisfaction of the Interim Awards would require Purchaser to authorize release of a corresponding amount to Offshore from escrow.

## REQUEST FOR RELIEF

**WHEREFORE**, Respondent respectfully requests and Order and Judgment on its Cross-Petition as follows:

1. Denying Purchaser's Petition to Confirm the Interim Awards;

2. Vacating the Supplemental Interim Award;

3. Alternatively (and without waiver of any of Offshore's arguments in opposition to confirmation or in support of vacatur), if the Court finds the Interim Awards "final" for purposes of judicial enforcement, and not subject to non-confirmation or vacatur on the grounds Offshore has identified, Offshore requests that the Court remand the Interim Awards to the Tribunal with instructions to rule on the issues Offshore submitted for the Tribunal's decision, but which the Tribunal left undecided;

4. Awarding Offshore its attorneys' fees and costs incurred in this proceeding; and

5. Awarding Offshore such further relief as the Court may deem just and proper.

Dated: New York, New York
February 28, 2014

QUINN EMANUEL URQUHART & SULLIVAN, LLP

By: /s/ Peter E. Calamari
Peter E. Calamari
petercalamari@quinnemanuel.com

Julia J. Peck
juliapeck@quinnemanuel.com

51 Madison Avenue, 22nd Floor
New York, New York  10010
(212) 849–7000

David M. Orta
davidorta@quinnemanuel.com
*pro hac vice pending*

Derek L. Shaffer
derekshaffer@quinnemanuel.com
*pro hac vice pending*

777 6th Street NW, 11th Floor
Washington, DC 20001
(202) 538-8000

*Attorneys for Respondents Offshore Exploration and Production, LLC*