UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

ECOPETROL S.A., AND KOREA NATIONAL
OIL CORPORATION,

                              Petitioners and

Cross-Respondents,

                     v.

OFFSHORE EXPLORATION AND
PRODUCTION LLC,

                              Respondent
and Cross-Petitioner.

---

No. 1:14-cv-00529 (JGK)
Judge John G. Koeltl

**MEMORANDUM OF LAW IN OPPOSITION TO PETITIONERS' PETITION TO
CONFIRM ARBITRATION AWARDS AND IN SUPPORT OF RESPONDENT'S
CROSS-PETITION TO VACATE THE
SUPPLEMENTAL INTERIM ARBITRAL AWARD**

QUINN EMANUEL URQUHART
& SULLIVAN, LLP

51 Madison Avenue
New York, NY 10010
Tel: (212) 849-7000

777 6th Street NW, 11th Floor
Washington, DC 20001
(202) 538-8000

*Attorneys for Respondent and Cross-Petitioner
Offshore Exploration and Production LLC*

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ..................................................................................................1

FACTUAL BACKGROUND......................................................................................................1

ARGUMENT ..............................................................................................................................5

I.      THE TRIBUNAL'S INTERIM AWARDS ARE NOT SUFFICIENTLY FINAL
TO BE CONFIRMED.......................................................................................................8

II.     THE TRIBUNAL EXCEEDED ITS POWER IN DECIDING THE
SUPPLEMENTAL INTERIM AWARD, THUS REQUIRING DENIAL OF
CONFIRMATION AND  VACATUR .............................................................................14

          A.      The Tribunal Exceeded Its Power By Deciding A Dispute Arising Out Of
And/Or Relating To The Escrow Agreement. .......................................................15

          B.      The Tribunal Was Without Power to Issue the Supplemental Interim
Award Under Article 30 of the ICDR Rules..........................................................19

III.    THE SUPPLEMENTAL INTERIM AWARD SHOULD BE VACATED FOR
MANIFEST DISREGARD OF THE LAW.....................................................................21

IV.    IN THE ALTERNATIVE, THE INTERIM AWARDS SHOULD BE
REMANDED BECAUSE THE TRIBUNAL FAILED TO ADDRESS CRUCIAL
ISSUES ...........................................................................................................................24

CONCLUSION..........................................................................................................................26

i

# TABLE OF AUTHORITIES

**Page**

<u>**Cases**</u>

*In re AMR Corp.*,
   730 F.3d 88 (2d Cir. 2013).................................................................23

*In re American Express Fin. Advisers Securities Litig.*,
   672 F.3d 113 (2d Cir. 2011).............................................................20

*Americas Ins. Co. v. Seagull Compania Naviera, S.A.*,
   774 F.2d 64 (2d Cir. 1985)...............................................................24

*Bank Julius Bank & Co. v. Waxfield Ltd.*,
   424 F.3d 278 (2d Cir. 2005).............................................................22

*Bell Aerospace Co. Div. of Textron, Inc. v. Local 516 Int'l Union*,
   500 F.2d 921 (2d Cir. 1974).............................................................24

*Offshore Exploration & Production LLC v. Morgan Stanley Private Bank, N.A.*,
   13 Civ. 3537  2013 WL 6230324 (S.D.N.Y. Dec. 2, 2013)................22

*Contec Corp. v. Remote Solution Co.*,
   398 F.3d 205 (2d Cir. 2005).............................................................18

*Dewan v. Walia*,
   No. 12-2175, 2013 WL 5781207 (4th Cir. Oct. 28, 2013) ................23

*Duferco Int'l Steel Trading v. T. Klaveness Shipping A/S*,
   333 F.3d 383 (2d Cir. 2003).............................................................23

*E.I. Dupont De Nemours & Co. v. Jo Tankers, B.V.*,
   172 F. Supp. 2d 405 (S.D.N.Y. 2001).............................................24

*Employers' Surplus Lines Ins. Co. v. Global Reinsurance Corp.-U.S. Branch*,
   07 Civ. 2521, 2008 WL 337317 (S.D.N.Y. Feb. 6, 2008) .................12

*Fahnestock & Co. v. Waltman*,
   935 F.2d 512 (2d Cir. 1991).......................................................15, 19

*Goldman Sachs & Co. v. Golden Empire Sch. Fin. Auth.*,
   922 F. Supp. 2d 435 (S.D.N.Y. 2013).........................................16, 18

*Halligan v. Piper Jaffray, Inc.*,
   148 F.3d 197 (2d Cir. 1998).............................................................21

*Hoeft v. MVL Grp., Inc.*,
   343 F.3d 57 (2d Cir. 2003)................................................................6

*Int'l Multifoods Corp. v. Commercial Union Ins.*,
   309 F.3d 76 (2d Cir. 2002)...............................................................23

*Katz v. Feinberg,*
  167 F. Supp. 2d 556 (S.D.N.Y. 2001)...............................................................15, 19

*Kerr Mc-Gee Refining Corp. v. M/T Triumph,*
  924 F.2d 467 (2d Cir. 1991)..........................................................................12

*LaSalle Bank Nat'l Ass'n v. Nomura Asset Capital Corp.,*
  424 F.3d 195 (2d Cir 2005).............................................................................23

*M&C Corp. v. Erwin Behr BmbH & Co.,*
  No. 9107410 (E.D. Mich., 30 March 2001).......................................................24

*Metallgesellschaft A.G. v. M/V Capitan Constante,*
  790 F.2d 280 (2d Cir. 1986).................................................................9, 11, 13

*Michaels v. Mariforum Shipping S.A.,*
  624 F.2d 411 (2d Cir. 1980)....................................................................6, 9, 12

*Mitsubishi Heavy Industries, Ltd. v. Stone & Webster, Inc.,*
  2009 WL 3169973 (S.D.N.Y. 2009)..................................8, 9, 11, 12, 13, 14

*Olympia & York Florida Equity Corp. v. Gould,*
  776 F.2d 42 (2d Cir. 1985)...........................................................................24

*Parsons and Whittemore Overseas Co., Inc. v. Societe Generale De L'Industrie Du Papier
  (RAKTA),*
  508 F.2d 969 (2d Cir. 1974)..........................................................................15

*Pearl Seas Cruises, LLC v. Irving Shipbuilding Inc.,*
  No. 3:10-CV-1294, 2011 WL 577333 (D. Conn. Feb. 9, 2011)............................12

*Porzig v. Dresdner, Kleinwort, Benson, North America LLC,*
  497 F.3d 133 (2d. Cir. 2007).....................................................................21, 23

*Republic Nat'l Bank of New York v. Olshin Woolen Co. Inc.,*
  304 A.D.2d 401 (1st Dept. 2003)....................................................................23

*Rocket Jewelry Box, Inc. v. Noble Gift Packaging, Inc.,*
  157 F.3d 174 (2d Cir. 1998)..........................................................6, 9, 10, 11, 12

*STMicroelectronics, N.V. v. Credit Suisse Sec. (USA) LLC,*
  648 F.3d 68 (2d Cir. 2011)............................................................................21

*Snyder v. Wells Fargo Bank, N.A.,*
  No. 11-cv-4496, 2011 WL 6382707 (S.D.N.Y. Dec. 19, 2011)...............16, 17, 18

*Sperry Int'l Trade, Inc. v. Gov't of Israel,*
  532 F. Supp. 901 (S.D.N.Y. 1982) .................................................................11

*Stolt-Nielsen SA v. AnimalFeeds Int'l Corp.,*
  548 F.3d 85 (2d Cir. 2008), *rev'd on other grounds,* 130 S. Ct. 1758 (2010) ...........21

*T.Co Metals, LLC v. Dempsey Pipe & Supply, Inc.,*
  592 F.3d 329 (2d Cir. 2010)...........................................................................21

*Teletech Europe B.V. v. Essar Servs. Mauritius*,
   83 A.D.3d 511 (1st Dep't 2011) ........................................................................17, 18

*Trade & Transport, Inc. v. Natural Petroleum Charterers Inc.*,
   931 F.2d 191 (2d Cir. 1991) ....................................................................................9

*Vanship Holdings Ltd. v. Energy Infrastructure Acquisition Corp.*,
   65 A.D.3d 415 (1st Dept. 2009) ............................................................................23

*Western Employer Ins. Co. v. Jefferies & Co.*,
   958 F.2d 258 (9th Cir. 1992) ................................................................................21

*Zeiler v. Deitsch*,
   500 F.3d 157 (2d Cir. 2007) ..................................................................................11

### Rules / Statutes

New York Convention on the Recognition and Enforcement of Foreign Arbitral Awards of June
   10, 1958, as implemented at FAA, 9 U.S.C. §§ 201 et seq. ...................................1, 5, 6, 7, § II

FAA, 9 U.S.C. § 1, *et seq*........................................................................................ passim

American Arbitration Association, International Center for Dispute Resolution,  International
   Dispute Resolution Procedures ...................................................................5, § II(B)

### Secondary Authority

M. Gusy et al., A Guide to the ICDR International Arbitration Rules  (Oxford University Press
   2011) ...............................................................................................................19

Respondent and Cross-Petitioner Offshore Exploration and Production, LLC ("Offshore"), respectfully submits this memorandum of law in opposition to Petitioner's (hereinafter "Purchaser") Petition to Confirm Arbitration Awards and in support of Offshore's Cross-Petition to Vacate the Supplemental Interim Arbitral Award.

## PRELIMINARY STATEMENT

Purchaser has prematurely brought this action seeking to judicially enforce two *non-final interim* awards issued by the Tribunal in the Parties' pending ICDR arbitration: an April 16, 2013 "Interim Award" (or "IA") and a December 1, 2013 "Supplemental Interim Award" (or "SIA," collectively, the "Interim Awards") (Exs. 1-2)[1] The Interim Awards, which provisionally order Offshore to make an indemnity payment to Purchaser out of funds other than those in escrow for approximately $75.3 million in value-added taxes, which Purchaser paid to the Peruvian government, plainly are not "final" awards, as they are in flux and stand subject to significant future revision and adjudication by the Tribunal, including as to whether Offshore may be entitled to offsets for up to the full amount awarded. They are therefore unripe for judicial review and confirmation. Yet, even if the Awards were final, the SIA is fatally flawed for other reasons, and should be denied confirmation and vacated in accordance with the New York Convention and Federal Arbitration Act ("FAA"), or at the least remanded to the Tribunal to rule in the first instance on a crucial issue submitted, but omitted from its decision.

## FACTUAL BACKGROUND

In December 2008, the Parties entered into a Stock Purchase Agreement (as amended, the "SPA") (Ex. 3), through which Purchaser acquired from Offshore an oil and gas exploration and production business, including the company now known as Savia Peru S.A. ("Savia"). In

---

[1] Exhibit references, herein, are to exhibits attached to the accompanying Declaration of David M. Orta ("Orta Decl."), dated February 28, 2014.

the SPA's amended § 2.3(b)(i), the Parties agreed that $150 million of the $1.2 billion purchase price would be placed into escrow to cover potential tax and other indemnification liabilities.

Release of funds from escrow was governed by a separate Indemnification Escrow Agreement (the "EA") (Ex. 4), dated February 5, 2009.  While the SPA contains, at § 10.7, an arbitration agreement, the EA does not.  To the contrary, the Parties herein (and Morgan Stanley, as Escrow Agent ("Agent")), expressly consented and "irrevocably waiv[ed] any objection" to the jurisdiction of the New York courts over disputes arising thereunder.  (Ex. 4, § 12.)  The parties also specified, via a "Supremacy Clause," that the EA must control in the event of any discrepancy or inconsistency between it and the SPA.  (*Id.*)

Beginning in 2010, Purchaser asserted a series of claims against Offshore, eventually totaling $75.3 million, seeking indemnification for amounts that Savia had been assessed by the Peruvian tax authority ("SUNAT") for certain pre-acquisition tax liabilities for value added tax ("VAT").  (Ex. 5.)  Purchaser asserted its claims against the Escrow Account, and in each instance, took action under Section 3 of the EA to instruct the Agent to release to it corresponding amounts from escrow.  (*Id.*)  At the time, Offshore objected to the release of funds from escrow based on, *inter alia*, the fact that it was contesting the VAT liability due to Purchaser's breach of its obligations under the SPA to keep Offshore reasonably informed about and to tender control to it of the VAT tax contests.  (Ex. 6.)  Over three years after it was obligated to do so, Purchaser finally tendered partial control of the VAT contests to Offshore, who then began to obtain reversals of the assessments.  Those efforts have been extremely successful and, based on the outcomes to date in which three of the tax year assessments have been irrevocably reversed (to a legal finality) leading to the eventual reimbursement to Purchaser

of all amounts paid to SUNAT, it appears likely that Savia will be entitled to reimbursements for the entire VAT payment for all years.  (Orta Decl. ¶¶ 24-25.)

Offshore commenced arbitration in 2011 before the International Centre for Dispute Resolution ("ICDR"), seeking a declaration that it was not required to reimburse Purchaser for the VAT on the bases that Purchaser had breached its duties under the SPA to promptly cede control of the tax contests to Offshore and because the Peruvian courts would compel SUNAT to reimburse the amount that Savia paid, and Offshore would therefore ultimately owe Purchaser nothing.  Ecopetrol then sought an interim order from the Tribunal requiring Offshore to make an indemnity payment to Purchaser for the VAT.  (Ex 1, at 1.)

On April 15, 2013, the Tribunal issued its Interim Award, ordering Offshore to pay within 30 days the $75.3 million sought by Purchaser as reimbursement for the VAT taxes assessed and paid for the relevant tax years.  (Ex. 1.)  However, the Interim Award made clear that the Tribunal understood that significant issues concerning Offshore's ultimate responsibility, if any, for the VAT claims would be left for further adjudication.  (*Id.* at 2-4, 7 & Section I, *infra.*)  On May 2, 2013, Offshore tendered payment to Purchaser, as ordered, by issuing written instructions to the Agent to release $75.3 million in escrowed funds to Purchaser.  (Ex. 7.)[2]

On May 10, 2013, Purchaser reversed course and instructed the Agent—contrary to Purchaser's earlier instructions—*not* to release to Purchaser escrow funds to satisfy Offshore's

---

[2]   In order to effectuate this release, Offshore withdrew its former objections to the release of funds from escrow (Ex. 7), effectively returning the Parties to the situation contemplated under EA § 3, whereby Purchaser had made a demand for escrow release, without objection by Offshore, thus contractually requiring the Agent to release the requested funds.  (Ex. 4, § 3.)  Offshore subsequently took the position that it was conceding liability for the VAT claims so as to ensure that the Agent would be deemed to have sufficient authority under the EA to release funds in satisfaction of the IA.  Offshore, however, has made clear that this concession was without prejudice to its arguments that the Interim Awards are not "final" under the FAA for purposes of enforcement.  (Ex. 10, at 10 n.22 Further, Offshore does not concede that it must pay the VAT claims from new funds, as ordered in the SIA. Offshore also argues that it should ultimately owe Purchaser nothing on these VAT claims, as it should be awarded offsets for any reimbursements Savia receives from SUNAT, and was permitted to introduce evidence on these points at the recent merits hearing.  (Orta Decl. ¶¶ 32 n.2).

obligation under the Interim Award.  (Ex. 8.)   Purchaser instead demanded, in contradiction of the provisions governing escrow release in the EA and SPA, that Offshore make payment out of new funds, so that the amount of security in escrow (which Purchaser improperly sought to keep inviolate to secure other claims it is making in arbitration) would not be depleted.  (Ex. 9.)

With Purchaser blocking the release of funds, and the Agent unwilling to act given Purchaser's objection (*see* §5(c) of EA), Offshore requested this Court order the Agent to release the $75.3 million from escrow in accordance with the terms of the EA.  (1:13-cv-03537 (JGK), hereinafter "Dkt." 1).   While the EA contains the Parties' irrevocable consent to court jurisdiction for disputes involving the release of funds from escrow, Purchaser moved to stay the action, in favor of the pending arbitration.  This Court granted that motion, holding that it was for the arbitrators to determine "in the first instance" whether Offshore's claim was arbitrable, and if so, if its attempted tender of payment from escrow was effective.  (Dkt. 62.)  Offshore has noticed an appeal from the Court's final December 23, 2013 judgment dismissing that action. (Dkt. 64.)

Meanwhile, on June 3, 2013, well-past the mandatory 30-day deadline under ICDR Article 30 for actions to interpret or clarify arbitral awards, Purchaser requested that the Tribunal interpret its IA to require Offshore to pay the award from new funds.  (Ex. 9.)  Notwithstanding that the Tribunal was without jurisdiction under the ICDR Rules to adjudicate Purchaser's tardy application, and was acting in excess of the powers ascribed to it by the Parties' agreement in deciding a dispute over the Escrow Agreement, which the Parties had not contracted to arbitrate, on December 3, 2013, the Tribunal issued its SIA.  (Ex. 2.)  In it, the Tribunal interpreted its Interim Award by directing that the Interim Award required Offshore to pay the $75.3 million from funds other than those in escrow when the Interim Award is *silent* on the manner by which

4

Offshore must pay the award.  (*ld.* at 7-8).  The Tribunal again expressly noted that significant issues bearing on this VAT claim remained for further adjudication.  (*Id.* at 1, 10.)

Offshore brought a timely petition under Article 30 of the ICDR Rules seeking, *inter alia*, that the Tribunal reconsider its decision to assume jurisdiction over this question of escrow release when it had no jurisdiction to do so under the EA or SPA, and was *functus officio* under the ICDR Rules, and requesting that the Tribunal rule on several matters that Offshore had presented to the Tribunal for resolution, but that the Tribunal had left undecided – including whether Section 3 of the EA entitled Offshore to a release from escrow in an amount equal to any amounts paid from fresh funds in satisfaction of the Interim Award.  (Ex. 10.)  The Tribunal issued a Procedural Order, declining to make any further rulings.  (Ex. 11.)

Over the past weeks, the Tribunal held hearings on the merits of the case in arbitration in which issues relating to VAT were squarely in dispute.  It is clear from these hearings (which are expected to conclude March 12, 2014) that the ultimate amount of liability and other issues concerning that claim remain in flux – including whether Purchaser breached its obligations to cede timely control of the VAT tax contests; whether Offshore is entitled reimbursement for any amounts refunded to Savia; whether a final award on the VAT claims may be payable from escrow; and whether any damages, fees or interest is due Purchaser.  (Orta Decl. ¶¶ 29-37.)

On January 28, 2014, Purchaser brought the instant action seeking confirmation of the Interim Awards.  For the reasons below, Offshore opposes confirmation of both awards and has brought its own Cross-Petition to Vacate the Supplemental Interim Arbitral Award.

## ARGUMENT

When parties agree to arbitrate disputes pursuant to an agreement involving interstate and foreign commerce, judicial review of resulting arbitral awards is subject to the FAA, 9 U.S.C. § 1, *et seq*., including its Chapter 2, which incorporates the New York Convention.  Though review

5

of arbitral awards is limited to certain grounds, "federal courts are not rubber stamps," and parties may not "relieve [courts] of their obligation to review arbitration awards for compliance" with the FAA. *Hoeft v. MVL Grp., Inc.*, 343 F.3d 57, 64-65 (2d Cir. 2003), *overruled on other grounds in Hall St. Assocs., L.L.C. v. Mattel, Inc.*, 552 U.S. 576 (2008).

As a threshold and dispositive matter here, a federal court is "without authority" to review a non-final, interim award. *Michaels v. Mariforum Shipping S.A.*, 624 F.2d 411, 414 (2d Cir. 1980). While the law recognizes certain limited exceptions, including allowing an interim award to be enforced if it finally, conclusively and "definitively" resolves a discrete and severable issue in a case, so that the issue does not stand in need of further adjudication (*see, e.g.*, *Rocket Jewelry Box, Inc. v. Noble Gift Packaging, Inc.*, 157 F.3d 174 (2d Cir. 1998)) – such is plainly not the case here.  In both Interim Awards, the Tribunal expressly left open significant issues for further adjudication with respect to the VAT claims – and indeed, the record shows that the merits hearing has been replete with testimony and argument by both parties with direct bearing on both liability and damages for these claims.   Enforcing the Interim Awards now, while the Tribunal is in the process of reaching a truly "final" award – that may substantially offset, if not entirely abate, Offshore's responsibility for the VAT claims (and/or permit their satisfaction from escrow) – and which may become subject to its own enforcement proceedings – would both conflict with controlling precedent on finality, and create the potential for significant waste of judicial resources.  Under the circumstances, well-settled principles of law and the interests of judicial economy, both powerfully support and require denial of confirmation of these non-final Interim Awards.

However, even if this Court were to conclude that the Interim Awards bear the necessary requisites of "finality" (which Offshore submits they do not), this Court should decline

Purchaser's invitation to confirm these Interim Awards.  Under Article V(1)(c) of the New York Convention, an award should be denied recognition and enforcement where it deals "with a difference not contemplated by or not falling within the terms of the submission to arbitration, or it contains decisions on matters beyond the scope of the submission to arbitration."  NY Conv. Art. V(1)(c).  Even if, as this Court held, it were properly for the arbitrators to determine this threshold question of arbitrability "in the first instance," that cannot shield the Tribunal's decision to improperly assume jurisdiction over a dispute under and relating to the Escrow Agreement from subsequent judicial review and challenge.  The Parties never agreed to arbitrate disputes under the Escrow Agreement, instead contracting to submit such disputes to New York courts.  (Ex. 4, § 12.)  By improperly exercising arbitral jurisdiction over a matter "beyond the scope of the submission to arbitration," the Tribunal exceeded its authority and rendered its award non-confirmable and non-enforceable under the New York Convention.

The Tribunal's assumption of jurisdiction over the Purchaser's supplemental application to interpret the IA was also in violation of Article 30 of the ICDR Rules, which provides a strict 30-day deadline for parties to seek interpretation or correction of arbitral awards or the making of additional awards on matters submitted to but not decided by the Tribunal.  Such applications are permissible only in accordance with Article 30.  By acting on Purchaser's request beyond the mandatory 30-day deadline set forth in the Parties' chosen arbitral rules, the Tribunal once again acted beyond the scope of the Parties' submission to arbitration, thus providing additional and independent grounds for non-confirmation under Article V(1)(c).  For these same reasons, the SIA should be vacated under FAA § 10(a)(4), which provides for annulment of any award where "the arbitrators exceeded their powers."  9 U.S.C. § 10(a)(4).

Additionally, the SIA should be vacated because it manifestly disregarded controlling New York law. The Tribunal's decision to improperly exercise jurisdiction over a dispute arising under the Escrow Agreement ignored clear and well-settled principles of New York law – including the law's clear mandate that contracts be interpreted in a manner to give effect to all terms and to avoid interpretations that render essential terms superfluous or void. By failing to give effect to (and functionally nullifying) the EA's "Supremacy Clause," which required the EA's judicial forum selection clause to prevail over the SPA's arbitration clause in the event of conflict or discrepancy, the Tribunal disregarded clearly established principles of New York contract law leading to an erroneous outcome.

Finally, even if this Court disagrees with Offshore's position that the Interim Awards are non-enforceable for the reasons above, the Court should, in the alternative, remand the Interim Awards to the Tribunal, because the Tribunal failed to decide critical issues presented to it – *i.e.*, whether the dispute resolution clause in the EA is inconsistent or discrepant with that of the SPA and whether pursuant to Section 3 of the EA, a payment by Offshore out of new funds in satisfaction of the Interim Awards would require Purchaser to authorize release of a corresponding amount to Offshore from escrow. Where, like here, an arbitral tribunal fails to decide crucial issues submitted – remand, rather than enforcement, is the appropriate remedy. The Tribunal's failure to decide these key issues relating to the VAT claims further reinforces the incomplete, non-final and hence, non-enforceable, nature of the Interim Awards.

I.    **THE TRIBUNAL'S INTERIM AWARDS ARE NOT SUFFICIENTLY FINAL TO BE CONFIRMED**

As a threshold matter, neither the Interim Award nor the SIA are sufficiently final to be confirmed by this Court. Under the FAA, "a district court only has the power to confirm or vacate a *final* arbitration award." *Mitsubishi Heavy Industries, Ltd. v. Stone & Webster, Inc*.,

2009 WL 3169973, at *4 (S.D.N.Y. 2009) (Koeltl, J.) (emphasis added) (citing *Michaels v. Mariforum Shipping, S.A.,* 624 F.2d 411, 414 (2d Cir. 1980).[3]  Generally, "[i]n order to be 'final,' an arbitration award must be intended by the arbitrators to be their complete determination of all claims submitted to them," resolving both liability and damages.  *Id.*

The Court of Appeals for the Second Circuit has recognized two limited exceptions to this rule.  First, an interim award may be confirmed if it "finally and conclusively dispose[s] of a separate and independent claim and [is] subject to neither abatement nor set-off . . . ."  *Metallgesellschaft A.G. v. M/V Capitan Constante,* 790 F.2d 280, 283 (2d Cir. 1986).  Second, an interim award may be confirmed when it finally resolves one phase of explicitly bifurcated proceedings.  *Trade & Transport, Inc. v. Natural Petroleum Charterers Inc.*, 931 F.2d 191, 195 (2d Cir. 1991).  *See also Mitsubishi Heavy Indus.,* 2009 WL 3169973, at *4.  The liability and damages phases of these arbitral proceedings were never bifurcated.[4]  Thus, the only avenue through which Purchaser can show that the Interim Awards are sufficiently final for judicial enforcement within the meaning of the FAA is by demonstrating that they "finally and conclusively" resolved a separate and independent claim that is subject to neither abatement nor setoff.  Neither award does so.

In *Rocket Jewelry Box,* the Court of Appeals explained that in order for an interim arbitration award to meet the test for finality, it must resolve the issues submitted to arbitration "definitively enough so that the rights and obligations of the two parties, with respect to the

---

[3]   This finality requirement furthers important policy considerations, since judicial review of a partial award "that may never become enforceable to be followed by a subsequent round of judicial review after a final award," rarely serves the efficiency purposes of the arbitration process or the judicial process.  *Mitsubishi,* 2009 WL 3169973, at *4; *Michaels,* 624 F.2d at 414-15 ("Policy considerations, no less than the language of the [FAA] and precedent construing it, indicate that [courts] should not be called upon to review preliminary rulings of arbitrators. Most of the advantages inherent in arbitration are dissipated by interlocutory appeals to a district court.").

[4]   As this Court has previously recognized, this second exception applies only where, unlike here, the parties "expressly agree to bifurcate liability and damages."  *Mitsubishi Heavy Industries,* 2009 WL 3169973 at *5.

issues submitted, *do not stand in need of further adjudication*." *Rocket Jewelry Box, Inc.*, 157 F.3d at 176 (emphasis added).   Here, the arbitrators did precisely the opposite – expressly observing that the VAT issues in dispute in the Interim Awards remained subject to significant future adjudication.   For instance, in ordering Offshore in the Interim Award to reimburse Purchaser for Savia's payments to SUNAT, the Tribunal expressly stated that, upon resolution of the merits, Offshore may be entitled to a return of any amounts indemnified, either because Purchaser breached its SPA obligations to cede control of tax contests, or otherwise:

> This Interim Award does not in any way resolve the underlying merits of the dispute among the parties, including, without limitation, whether Offshore would ultimately be entitled to, among other relief, the return of the amounts paid pursuant to this Order by reason of the Respondents' breach of the SPA, *or otherwise*.

Ex. 1, at 7 (emphasis added).[5]   *See also id*. at 4.   Indeed the Tribunal observed that Respondent itself had envisaged that Offshore might be entitled to its money back:

> In response, [Purchaser] asserts . . . [i]f Offshore proves to be correct in its assertion that these taxes are not owing by reason of the Respondents' alleged breach of their obligation to cede control of the tax contests to Offshore, or because there will eventually be no (or very limited) damages because the

---

[5]   As discussed in note 2, above, as part of its effort to satisfy the Interim Award through escrowed funds, Offshore "conceded liability" for the VAT claims to ensure that the Interim Award would be "final" for purposes of the EA.  Issues relating to Purchaser's breach of those indemnification obligations, nevertheless, remain centrally in dispute, with the Tribunal recently admitting significant evidence bearing on Purchaser's failure to timely and fully transfer control over those tax proceedings.  (Orta Decl. ¶¶ 31.)  While the Tribunal noted it remains an open issue as to precisely what purpose that evidence will serve, the Tribunal suggested that, at the least, it may have bearing on whether and to what extent Offshore may be relieved of paying Purchaser attorneys' fees or pre-judgment interest in connection with these VAT claims.  (*Id*. at ¶ 32.)  Additionally, despite Offshore's "concession," it indisputably continues to maintain its claim that Offshore should be entitled to offsets or abatement for any amounts recovered by Offshore for Savia as a result of Offshore's success in reversing the VAT assessments in the Peruvian courts, having now extinguished the tax liability findings in Peru.  The Tribunal likewise admitted substantial evidence bearing on these Peruvian proceedings.  (*Id*. at ¶¶ 33-34.)  Purchaser, too, has argued that Offshore's concession has not in any way definitively resolved the many issues relating to the VAT claims, which stand subject to further adjudication. *See, e.g*., Ex. 13 at 3: "Seller's concession of liability has not been incorporated in any award and in any event did not resolve Purchaser's pending claims for still-accruing interest on the amounts paid by Savia for VAT or for attorneys fees paid in conducting the tax contests until Seller took them over, nor does it resolve the consequences of Seller's dilatory litigation seeking to avoid compliance with the Interim Award."

Peruvian courts will compel the tax authorities to reimburse the amounts that Savia has paid, *then Offshore will get its money back*.[6]

*Id.* at 3. Thus, by its plain language, the IA – in which the Tribunal expressly acknowledged that its preliminary assessment against Offshore for the VAT claims could be reduced, if not entirely offset, both by further proceedings in the arbitration and the developing Peruvian tax litigation – clearly stands subject to "further adjudication," and is therefore unripe for judicial review. *Rocket*, 157 F.3d at 176; *Mitsubishi*, 2009 WL 3169973, at *6 (declining to confirm interim award where award did not "definitively resolve the issue of liability" or damages, both of which were contingent on the outcome of another litigation); *cf. Metallgesellschaft A.G.*, 790 F.2d at 283 (interim award was final because, unlike here, it "disposed of a separate and independent claim and *was subject to neither abatement nor set-off* . . . .") (emphasis added).[7]

The SIA is also explicitly non-final. The Tribunal expressly acknowledged that issues relating to damages, costs and fees for the VAT claims are left open to further adjudication:

---

[6]   The Tribunal itself observed that the challenge to Savia's tax assessments in the Peruvian courts "have proven successful [to date] and there is reason to be optimistic that the taxes and penalties, with interest will be returned to Savia once the Peruvian court proceedings have concluded. (Ex. 1, at 2 n.2).

[7]   The additional cases cited by Purchaser (*see* Purchaser's Br. at 6-7) as allegedly substantiating the finality of the Interim Awards simply reinforce controlling Second Circuit law which precludes judicial review of non-final awards which do not "finally and conclusively" resolve separate and independent claims and, as such, do not help Purchaser's position. In *Zeiler v. Deitsch*, 500 F.3d 157, 169 (2d Cir. 2007), a case involving the dissolution of a partnership, the Second Circuit approved the District Court's confirmation of 8 interim arbitral orders requiring accountings of certain real estate and life insurance assets. The Court held that because, unlike here, the orders "finally and conclusively disposed of a separate and independent claim," they were ripe for judicial review. *Id.* at *169. The Court further observed that, unlike here, the confirmable nature of the various accounting orders "stem[med] from the unique [and '[ir]regular'] character of [the] arbitration, as agreed by the parties," whereby the parties asked the arbitrators to "preside over the continuing process of sorting out the details of a commercial relationship, *entering operative decisions along the way*." *Id.* (emphasis added). *Sperry Int'l Trade, Inc. v. Gov't of Israel*, 532 F. Supp. 901, 906 (S.D.N.Y. 1982) is also distinguishable. In that case, the Court confirmed an arbitral interim decision requiring the parties to post funds into escrow pending a final decision on the merits, on the basis that the arbitrators' interim decision was a final award "on a clearly severable issue." *Id.* at 909. The facts in no way resemble the situation here, where the arbitrators in directing Offshore to make payment to Purchasers on the VAT claims expressly noted that Offshore's liability for such amount could be reduced, entirely reversed and/or subject to additional damages or fees based on the outcome of further adjudication in the Peruvian courts and/or the issues in dispute at the merits hearing. The Court in *Sperry* also noted that, unlike here, the arbitration award sought to be enforced "was neither labeled nor propounded as an 'interim' one," and expressly directed "that either party is at liberty to apply forthwith for confirmation and/or enforcement of the Award to this Court." *Id.*

> [T]he Tribunal . . . DEFERS until the final hearings in this arbitration any decision on whether damages, interest and costs, if any, allegedly caused by the Seller's actions, should be awarded to Respondent.

Ex. 2, at 9-10.  In addition, the Tribunal made clear the issue of whether Offshore can require payment of the VAT claims from escrow following the issuance of the final award remains an "open question" to be decided by it.  Ex. 2 ¶ 18 ("Indeed, whether the escrowed funds can be used to satisfy a final award over the objection of the Respondent is still an open question.").[8]

Under well-established law, by overtly reserving final determinations on the VAT claims for future adjudication (*Rocket*, 157 F.3d at 176), and expressly leaving open the question of damages, the SIA, like the Interim Award, thus failed to obtain the finality necessary for judicial confirmation in this Circuit.  *See Michaels,* 624 F.2d at 414 (award "did not finally dispose of any of the claims submitted and *left open the question of damages*," rendering it unripe for review) (emphasis added); *Kerr Mc-Gee Refining Corp. v. M/T Triumph*, 924 F.2d 467, 471 (2d Cir. 1991) (interim award not final where it "expressly left open" questions of damages, costs and attorneys' fees"); *Employers Surplus Lines Ins. Co. v. Global Reinsurance*, 2008 WL 337317, *5 (S.D.N.Y. 2008) ("as the Partial Final Award left open the question of damages on the second liability finding, it would have been error [for Court] to review it"); *Pearl Seas Cruises, LLC v. Irving Shipbuilding Inc.*, No. 3:10-CV-1294, 2011 WL 577333, at *8 (D. Conn. Feb. 9, 2011) (interim award non-final and unripe for review where it did not decide "the

---

[8]   Even if the Tribunal did intend its Interim Awards to have immediate effect (which does not appear to be the case), that would not control this Court's determination as to whether these Interim Awards are *final and judicially enforceable* within the meaning of the FAA.  *See Mitsubishi*, 2009 WL 3169973 at *6 ("It is of no effect that the tribunal now considers its . . . award to be final and certain as to liability; what matters is whether the tribunal finally resolved the issue so that it does 'not stand in need of further adjudication.'"); *Employers' Surplus Lines Ins. Co. v. Global Reinsurance Corp.-U.S. Branch*, 07 Civ. 2521, 2008 WL 337317 at *8 (S.D.N.Y. Feb. 6, 2008) ("[I]rrespective of the arbitrator's intent, the partial award must resolve issues definitely enough so that the rights and obligations of the two parties . . . do not stand in need of further adjudication . . . .").

ultimate claims for damages before it," and "addressed only interim issues, which are intertwined with the claims that remain pending before the Panel").

That the Interim Awards were not intended to – and did not – serve as a final and conclusive determination of the VAT claims is further evidenced by the recent merits hearing, in which the VAT claims featured prominently.  (Orta Decl. ¶¶ 29-37.)  Now that the merits hearing has nearly concluded, the Tribunal is tasked with reaching a final decision on precisely those questions left open in the Interim Awards – whether Offshore may be entitled to an offset or abatement as a result of Offshore's success in obtaining judgments extinguishing the tax liability and ordering SUNAT to refund to Savia the taxes paid; whether Offshore may satisfy any final VAT award from escrowed funds and, conversely, whether the Purchasers might be entitled to further "damages, interest or costs" relating to these claims.  (Ex. 1, at 3, 4, 7; Ex. 2, at 10.)  That so much remains for further adjudication with respect to the VAT claims compels the conclusion that the Interim Awards were not final and conclusive decisions on separate and independent claims, as would be required for enforcement under the FAA.  *Metallgesellschaft A.G.,* 790 F.2d at 283; *Mitsubishi*, 2009 WL 3169973, at *4.[9]

---

[9]  While Purchaser contends that Offshore has previously admitted that the Interim Awards constitute "final awards" (*see* Purchaser Br. at 7), Purchaser omits that this was in a very different context.  The passages Purchaser quotes are from briefing prior to the Tribunal's issuance of the SIA and were made in the context of Offshore's argument that the Tribunal's "Interim Award" constitutes an "Arbitral Award" within the meaning of the SPA and EA sufficient to trigger escrow release under the EA.  There can be no question that the standard of finality under the EA and SPA is very different than that of the FAA.  Purchaser also fails to acknowledge that Offshore explicitly reserved its right to argue that its position that the Interim Award is final within the meaning of the EA or SPA does not concede its finality for any other purpose, *including for enforcement purposes under the FAA.  See, e.g.,* (Ex. 10 at 10 n.23).  Offshore maintained this position that finality for purposes of the FAA was an open question in the December 23, 2013 hearing before this Court (Ex. 14, at 10), and this Court agreed that the question of whether the Interim Award is final remains subject to judicial review: "The Court: You have an arbitration decision.  Whether that's really a final decision is subject to review."  *Id*. at 6; *see also id*. at 9-10, 16.  Conversely, Purchaser has recently argued that the Interim Award is not final for the very reasons Offshore has shown herein that the Award should be denied judicial review under the FAA – namely, that it did not "finally" resolve all open issues relating to the VAT claims.  *See* Ex. 13, at 3: "The Tribunal made quite clear in the Interim Award that '[t]his Interim Award does not in any way resolve the underlying merits of the dispute among the parties, including, without limitation, whether Offshore would ultimately be entitled to, among other relief, the return of the amounts paid pursuant to this Order by reason of the Respondents' breach of the SPA, or otherwise.' . . . [t]he Interim Award . . . *was not a final resolution of all issues relating to the pending VAT claims*." (emphasis added.)  Indeed,

Additionally, the fact that the Tribunal is currently engaged in the process of revisiting questions of both liability and damages for the VAT claims as part of its final merits award, further highlights the inefficiency and indeed, inappropriateness, of Purchaser's efforts to enforce the Interim Awards now.  That award – which may fundamentally alter the Tribunal's provisional apportionment of responsibility and damages for the VAT claims – may itself become subject to confirmation or challenge proceedings before this Court.  And as this Court has recognized, confirming an interim award that may be altered or negated by a final confirmable award is inconsistent with the finality mandate of the FAA, and "would not serve the efficiency of the arbitration or the judicial process." *Mitsubishi*, 2009 WL 3169973, at *7.  In sum, because neither of the Interim Awards "finally and conclusively" dispose of a separate and independent claim, and both stand subject to further adjudication, as a matter of both governing law and sound judicial and arbitral economy, the Petition to Confirm should be denied as unripe.

## II.   THE TRIBUNAL EXCEEDED ITS POWER IN DECIDING THE SUPPLEMENTAL INTERIM AWARD, THUS REQUIRING DENIAL OF CONFIRMATION AND VACATUR

In the event this Court determines it has jurisdiction to review the Interim Awards, it should nevertheless deny Purchaser's attempt to confirm the SIA and grant Offshore's Cross-Petition for vacatur on the basis that the SIA was rendered in excess of the Tribunal's power.

Where a Tribunal rules on an issue not submitted to arbitration by the parties, or determines an issue beyond the scope of the arbitration clause, it exceeds its authority under Section 10(a)(4) of the FAA, and the award will be vacated.  *See* 9 U.S.C. § 10(a)(4) (court may

---

Purchaser expressly cited the very same policy reasons this Court has invoked when refusing to enforce interim awards which fail to finally and conclusively resolve arbitral claims in their entirety; *i.e.*, that premature review of non-final awards may result in piecemeal and wasteful litigation: "As noted above, even the VAT claims have not been resolved in their entirety.  *Piecemeal reduction of individual claims and portions to 'final' awards would serve no purpose other than to multiply the proceedings and further burden the parties with wasteful litigation.*"  *Id.* at 3.  *See Mitsubishi*, 2009 WL 3169973, at *7 (noting the potential for inefficiency and potentially redundant and wasteful litigation resulting out of judicial review of non-final arbitral awards).

14

vacate arbitral award where "the arbitrators exceeded their powers"); *Fahnestock & Co. v. Waltman*, 935 F.2d 512, 515-16 (2d Cir. 1991) ("we have recognized that if arbitrators "rule[ ] on issues not presented to [them] by the parties, [they have] exceeded [their] authority and the award must be vacated.") (citations omitted); *Katz v. Feinberg*, 167 F. Supp. 2d 556, 572 (S.D.N.Y. 2001) (granting partial vacatur under § 10(a)(4) where arbitrators exceeded their powers  in deciding  issue that parties intended to exclude from the consideration of arbitrators).

Similar conduct, *i.e*, where an award deals "with a difference not contemplated by or not falling within the terms of the submission to arbitration, or it contains decisions on matters beyond the scope of the submission to arbitration" justifies non-confirmation under the New York Convention Art. V(1)(c). *Parsons and Whittemore Overseas Co., Inc. v. Societe Generale De L'Industrie Du Papier (RAKTA)*, 508 F.2d 969, 976 (2d Cir. 1974) (Article V(1)(c) "tracks in more detailed form [FAA § 10(a)(4)], which authorizes vacating an award 'where the arbitrators exceeded their powers.' Both provisions basically allow a party to attack an award predicated upon arbitration of a subject matter not within the agreement to submit to arbitration.").

 As discussed below, by improperly exercising jurisdiction over a dispute that the Parties had contracted to submit to the New York courts, and in acting on Purchasers' tardy application to clarify the IA beyond the time for such applications under Article 30 of the ICDR Rules, the arbitrators exceeded the powers granted to them under the Parties' agreement.  These instances of impermissible jurisdictional overreach warrant both non-confirmation and vacatur of the SIA under New York Convention Art. V(1)(c) and FAA Section 10(a)(4), respectively.

A.      The Tribunal Exceeded Its Power By Deciding A Dispute Arising Out Of And/Or Relating To The Escrow Agreement.

It is "undisputed that an agreement to arbitrate is a matter of contract, and therefore a party cannot be required to submit to arbitration any dispute which [it] has not agreed to submit."

*Goldman Sachs & Co. v. Golden Empire Sch. Fin. Auth.*, 922 F. Supp. 2d 435, 440 (S.D.N.Y. 2013); *Snyder v. Wells Fargo Bank*, 2011 WL 6382707, at *4 (S.D.N.Y. 2011) (party could not be compelled to arbitrate claims arising under a "distinct contract not providing for arbitration" because "arbitration can only be required where the parties have voluntarily agreed to it.").[10]

Here, the Parties agreed to arbitrate disputes arising only out of the SPA.  (Ex. 3 § 10.7.) Although they easily could have inserted a similar clause in the EA, they did not.  Instead they did the opposite – contracting to "irrevocably" waive any objection to, and expressly "consenting to" the jurisdiction of the courts of New York for actions arising out of and/or relating to the EA. (Ex. 4, § 12.)  Furthermore, both the SPA and the EA plainly provide that the release of funds from escrow shall be governed by the E A.  (SPA § 2.3(b)(i)) ("Any amounts released from the Escrow Amount (whenever released) shall be released in accordance with the terms of the EA."); (Ex. 4 § 2.) ("Purchaser is depositing with the [Agent] the Escrow Amount, to be held by the [Agent] in accordance with the terms hereof.").[11]  And in the event of any inconsistency or discrepancy between the EA and the SPA, the Parties provided that the provisions of the SPA "shall prevail."  (*Id.*)

In light of the Parties' clear agreement that questions regarding the release of escrowed funds would be determined in accordance with the EA, and the fact that the Parties *did not agree* to submit disputes arising under or relating to the EA to arbitration, the Tribunal had no

---

[10]   As noted above, Offshore has noticed an appeal of this Court's prior order referring to the arbitrators "in the first instance" the question of whether the Tribunal possesses jurisdiction to decide this dispute over release of funds from escrow.  (Dkt. Nos. 52, 64.)  Even if the Second Circuit were to affirm that this question was properly posed to the arbitrators in the first instance, that would not shield the arbitrators' jurisdictional decision (if "final" under the FAA) from judicial review for non-confirmation and vacatur under the FAA and New York Convention.

[11]   *See also*, EA, § 3 ("Purchaser and Seller wish [the Escrow Amount] to be subject to the terms and conditions set forth herein."; *id.* at  4 ("Agent shall continue to hold the Unresolved Amount until the payment thereof is resolved in accordance with Section 3 of this [EA]."). To the extent SPA § 8.6, which states that escrow funds are to be disbursed "in accordance with the terms of the [SPA] and the Indemnification Escrow Agreement" creates any ambiguity, EA § 12 requires that this conflict be resolved in favor of the EA.

jurisdiction to resolve whether Purchaser could legitimately block a release of funds from escrow in satisfaction of an indemnification claim.[12]

Indeed, courts in this Circuit have cautioned against too carelessly transplanting an arbitration clause from one agreement to another:

> [W]hile multiple documents executed at the same time and concerning the same subject matter are required to be read together under New York law, this does not mean that arbitration clauses . . . can be lifted from one document and transferred to another. Furthermore, the omission of an arbitration clause in the IMA suggests that [Plaintiff] did *not* agree to arbitrate disputes under the IMA since the omission of an arbitration clause in an otherwise comparable document strongly suggests that such omission was *intentional*.

*Snyder v. Wells Fargo Bank, N.A.*, No. 11-cv-4496, 2011 WL 6382707, at *4-5 (S.D.N.Y. Dec. 19, 2011) (declining to import arbitration agreement from one agreement to second related agreement between same parties, even though second agreement did not explicitly require court adjudication, but was merely silent with respect to the appropriate forum, because "arbitration can only be required where the parties voluntarily agreed to it") (emphasis in original).  The Parties' decision to not include an arbitration clause in the EA – an agreement executed over a month after the SPA, and an agreement whose provisions the Parties deemed should control over the SPA in the event of inconsistency or discrepancy – should likewise be viewed as an "intentional" decision to exempt disputes arising under or relating to the EA from arbitration.

The fact that the EA's dispute resolution clause may not contain "exclusive" language "expressly precluding" arbitration is of no moment, as that does not control whether the parties "agreed" to arbitrate disputes relating to the release of escrow funds.  Indeed, absence of exclusivity was no bar to the Appellate Division's decision in *Teletech Europe B.V. v. Essar*

---

[12] This is so even though the question of escrow release also touches upon provisions of the SPA, like Sections 8.6 and 2.3(b)(i). (Ex. 3.) The Parties finalized the drafting and execution of the EA over one month *after* they executed the SPA, and they did so knowing that both agreements contained provisions concerning escrow release.  In so doing, they agreed that the dispute resolution of the EA would control disputes concerning escrow release even if such disputes also touched upon the interrelated provisions with the SPA.

*Servs. Mauritius*, 83 A.D.3d 511 (1st Dep't 2011).  There, much like here, the parties entered into a Stock Transfer Agreement ("STA") that directed all disputes arising out of that agreement to arbitration.  *Id*. at 511-12.  The parties then subsequently entered into an escrow agreement which contained what appears to have been a non-exclusive forum selection clause in which the parties "consent[] to the jurisdiction of courts in New York."  *Id.* at 512.  And that escrow agreement, like the one here, contained a supremacy clause which said "that in the event of a conflict between the escrow agreement and the STA, the escrow agreement controls."  *Id.*  The First Department held that while the agreements need to be harmonized when read together, it "does not follow that the arbitration clause in the S[tock] T[ransfer] A[greement] applies to this dispute."  *Id.*  The Court concluded that the escrow agreement controlled because, like here "[the escrow agreement] contains the conditions precedent for release of the escrow funds."  *Id.*[13]

The similar facts presented by this dispute necessitate the same result here.[14]  Yet, notwithstanding the Parties' failure to agree to arbitrate disputes arising from the EA, the Tribunal nevertheless improperly seized jurisdiction over a dispute quintessentially arising under

---

[13]   *See also Goldman Sachs*, 922 F. Supp. 2d 440-41 (noting that the Second Circuit has "rejected" the need for a forum selection clause to "explicit[ly]" waive or supplant a former arbitration agreement: "unless the plain meanings of [the arbitration agreement] and Forum Selection Clause can be harmonized, the latter must trump the former"); *Snyder*, 2011 WL 6382707, at *5 (even "explicit" requirement of court adjudication deemed unnecessary to avoid a party's being compelled to arbitrate, even though related agreement contained an arbitration clause and subject agreement was silent as to forum) .

[14]   Offshore respectfully disagrees with this Court's previous observation that Offshore's reliance on *Teletech* was "misplaced" because "*Teletech* involved a dispute over funds that an escrow agent had allegedly released in error."  Dkt. 62, at 20 n.6.  Whether the agent wrongfully disbursed funds, or (as in issue here) whether Purchaser is causing the Agent to wrongfully withhold funds, are simply two sides of the same coin.  The central claim in both involves the release of escrow funds.  Even this Court acknowledged that one of the issues in *Teletech* was "whether release was permissible without the parties' joint consent."  *Id.*  This is exactly Purchaser's contention here—that absent its consent, the Agent cannot release funds.  (Ex. 9, at 5-7)  Offshore also respectfully asserts that *Contec Corp. v. Remote Solution Co*., 398 F.3d 205, 208 (2d Cir. 2005), which this Court previously invoked when referring the question of arbitrability to the arbitrators, cannot support the Tribunal's wrongful decision to exercise jurisdiction over this escrow dispute, since *Contec* only concerned the threshold question of whether the court or arbitrator should decide the question of jurisdiction in the first instance, and did not touch on the merits of the arbitrators' subsequent jurisdictional decision.

and implicating the EA.[15]  By doing so, it plainly exceeded the powers granted to it by the

Parties, thus warranting both non-confirmation and vacatur.  *Fahnestock & Co.*, 935 F.2d at 515-

16; *Katz v. Feinberg*, 167 F. Supp. 2d 556, 572 (S.D.N.Y. 2001) (vacating under FAA § 10(a)(4)

where arbitrators exceeded jurisdiction in deciding matter parties did not consent to arbitrate).

B.   The Tribunal Was Without Power to Issue the Supplemental Interim Award Under Article 30 of the ICDR Rules.

The Tribunal likewise was without jurisdiction to issue the SIA because Purchaser failed

to move the Tribunal for an order interpreting, correcting and/or supplementing the Interim

Award within the strict 30-day time limit set forth in Article 30 of the ICDR Rules.

Article 30 plainly states that Purchaser could only move the Tribunal to "interpret" the

First Interim Award,  "*within 30 days after receipt of [such] award . . . .*"  (ICDR Rules, Art.

30(1)), and the Tribunal, if it deemed such request justified, had only another 30 days thereafter

to issue a clarified award (*id*. at 30(2)).  If these "strict"[16] timing conditions are not met,  the

Tribunal has *no authority* to issue a supplemental award, as no other provision of the ICDR

Rules gives it power to clarify or interpret a prior award.

---

[15]   In seeking to defend its assumption of jurisdiction, the Tribunal incorrectly asserted that Offshore "put its rights and obligations under [SPA] Section 8.6 directly in play" by "seeking to tender payment of the Interim Award from [escrow]." (Ex. 2, ¶ 12.)  But the record (which was submitted to, but ostensibly ignored by, the Tribunal) clearly shows that Offshore did not invoke the SPA, but rather the EA, when seeking to tender payment from escrow.  Indeed, as Purchaser's request for supplemental relief acknowledges, Offshore's instruction asserted that the Agent was under a mandatory obligation to release said funds to Purchaser "under Section 3, [¶] 3 of the EA." (Ex. 9, at ¶ 11.)  The Tribunal's decision to assume jurisdiction thus rested on a false premise. And in any event, that the provisions of the SPA might have been implicated is of no consequence given the parties' agreement that disputes arising under or relating to the EA must be submitted to the courts, not to arbitration.

[16]   *See, e.g.,* M. Gusy et al., A Guide to the ICDR International Arbitration Rules, 261 (Oxford University Press 2011) ("[T]he ICDR Rules provide a *limited* opportunity for interpretation or correction of an award and for an additional award to be made on claims presented, but not included within the award.  Article 30 provides a *strict deadline* for any such application and for the tribunal's response.") (emphasis added).  (Ex. 18.) The " rationale behind such a limited review and *on such a strict timeline* is the concern not to interfere with the parties' agreement for a fast and final resolution of their dispute.  For this reason, arbitrators, courts, and commentators are quick to emphasize the *very limited scope* of an application under Article 30." *Id.* at 261.  Additionally, as "Article 30 does not contain any limitation on what sort of 'award' may be the subject of such an application," (*id*. at 264), it necessarily applies to regulate the procedure for seeking interpretation of *both* interim awards and final awards.

Notwithstanding this firm deadline, Purchaser waited until June 3, 2013, more than 30-days past the April 25, 2013 date on which the Interim Award was conveyed to the parties,[17] to seek a supplemental award interpreting it.  While Purchaser styled its petition as a request for a supplemental interim award under "Article 21 of the ICDR Rules[18]" (Ex. 9 at ¶ 1), Purchaser's request was in actuality an untimely attempt at interpretation or clarification of the Interim Award specifying the allowable means by which Claimant could satisfy that Award.

Indeed, this is precisely how the Tribunal understood its mandate. *See, e.*g., Ex. 2, at ¶ 19 (The Tribunal "trusts that this Supplemental Award will act to *clarify* the rights and obligations of the parties [regarding Seller's acceptable means of compliance with the Interim Award].").

By acting on Purchaser's request for interpretation beyond the mandatory 30-day deadlines within Article 30, the Tribunal exceeded its powers.  Although, as noted in Section II(A), above, this dispute over the release of funds from escrow was not properly in the province of the arbitrators in the first place, once the Tribunal determined that this particular dispute fell within the scope of the arbitration agreement, it was not at liberty to disregard the terms of that very agreement.  *See In re American Express Fin. Advisers Securities Litig.*, 672 F.3d 113, 127 (2d Cir. 2011) ("'[T]he FAA's primary purpose [is to] ensur[e] that private agreements to arbitrate are enforced according to their terms.'") (citing *Volt Info. Sciences v. Leland Stanford Jr. Univ.,* 489 U.S. 468, 478 (1989)).  The parties contracted for application of the ICDR Rules (SPA, § 10.7), and the Tribunal was thus bound to apply them.  *Id.*  By disregarding Article 30's strictures and deciding Purchaser's tardy application well beyond the time allowed for such clarifications under the Parties' chosen rules, the Tribunal exceeded the powers the parties vested

---

[17]   The ICDR sent the IA to the Parties by email on April 25, 2013 at 1:06 p.m.  (Ex. 10, at 4, n.12.)

[18]   Article 21 of the ICDR allows a tribunal to order interim measures of protection at a parties request.  It does not, however, address actions to clarify or interpret a prior interim measures order.  Any such effort at interpretation or clarification is subject to Article 30, and the time limits set forth therein.

in it. *Western Employer Ins. Co. v. Jefferies & Co.*, 958 F.2d 258, 261 (9th Cir. 1992) (vacating award under 10(a)(4) where arbitrators failed to comply with a requirement of the parties' arbitration agreement requiring the arbitrators make findings of fact and conclusions of law and noting that a party has "a right to arbitration according to the terms for which it contracted").[19] As such, the SIA should be denied confirmation and vacated.

## III.   THE SUPPLEMENTAL INTERIM AWARD SHOULD BE VACATED FOR MANIFEST DISREGARD OF THE LAW

The SIA should be vacated for the additional reason that its decision to exercise arbitral jurisdiction over the Parties' dispute over escrow release, which was made in derogation of – and functionally annulled – the EA's "Supremacy Clause", manifestly disregarded controlling and well-established New York law[20] on contract interpretation.  In addition to the FAA's statutory grounds for vacatur, a court may vacate an award if it exhibits a "manifest disregard of the law." *Porzig v. Dresdner, Kleinwort, Benson, North America LLC*, 497 F.3d 133, 139 (2d. Cir. 2007).[21]  Manifest disregard occurs where the arbitrators "intentionally disregard" law that is "clear, and in fact explicitly applicable to the matter," leading to an "erroneous outcome."  *T.Co Metals, LLC v. Dempsey Pipe & Supply, Inc.*, 592 F.3d 329, 339 (2d Cir. 2010).

---

[19]   Further, although Offshore contends the Interim Award was not a "final" award within the meaning of the FAA (Section I, *supra*), if this Court were to disagree, the fact that the Tribunal issued a clarification beyond the time limit allowed by the ICDR Rules would likewise subject the SIA to non-recognition and vacatur under the common law doctrine of *functus offic*io.  *See, e.g.*, *Trade & Transp., Inc. v. Natural Petroleum Charterers Inc.*, 931 F.2d 191, 195 (2d Cir. 1991)) (holding that tribunal was "without authority to revisit partial final award on liability and observing that: "[t]he *functus officio* doctrine dictates that, once arbitrators have fully exercised their authority to adjudicate the issues submitted to them, "their authority over those questions is ended," and "the arbitrators have no further authority, absent agreement by the parties, to redetermine th[ose] issue[s]");

[20]   Both the SPA and the EA require the application of New York law.  (Ex. 3, § 10; Ex. 4, § 12.)

[21]   Courts in this Circuit have long employed "manifest disregard" as a basis for vacating arbitral awards under § 10(a). *See, e.g.*, *Halligan v. Piper Jaffray, Inc.*, 148 F.3d 197, 204 (2d Cir. 1998).  Although the Supreme Court has left open whether this standard survived its decision in *Hall, see Stolt–Nielsen*, 130 S. Ct. at 1768 n.3, this Court continues to employ it, *see STMicroelectronics, N.V. v. Credit Suisse Sec. (USA) LLC*, 648 F.3d 68, 78 (2d Cir. 2011) (assuming that it survived *Hall*); *T.Co*, 592 F.3d at 340 (positing that *Hall* reframed manifest disregard "as a judicial gloss on the specific grounds for vacatur") (quoting *Stolt–Nielsen SA v. AnimalFeeds Int'l Corp.*, 548 F.3d 85, 94 (2d Cir. 2008), *rev'd on other grounds*, 130 S. Ct. 1758 (2010)).

For the reasons in Section II(A), above, it should have been clear to the arbitrators that the Parties had not agreed to arbitrate disputes arising under or relating to the EA even where such disputes also touched upon the SPA.  Yet, even if the Tribunal was uncertain as to whether the EA's consent to court jurisdiction should govern over the SPA's arbitration clause, the Parties made unmistakably clear in Section 12 of the EA, that the provisions of the EA, including its forum selection clause, would prevail over those in the SPA: "In the event of any discrepancy or inconsistency between the provisions of this [EA] and the provisions of the [SPA], the provisions hereof shall prevail and be deemed to reflect the intent of the Parties hereto." (Ex. 4, § 12.)  Thus, where there is any discrepancy or inconsistency as between the contracts leading to ambiguity as to which contract's forum selection clause should govern a dispute over escrow release, the EA's consent to court jurisdiction takes primacy under § 12.[22]

The SIA's decision on jurisdiction fails to even mention the EA's "Supremacy Clause", let alone evaluate its relevance to the question before it.  (Ex. 2, at 4-7.)  And its holding, in which the Tribunal found that the SIA's arbitration clause prevailed over the EA's consent to court jurisdiction, despite competing claims for the application of the EA's forum selection clause, had the effect of reading EA's "Supremacy Clause" entirely out of the Parties' agreement, and rendering it nugatory and void.  Such an interpretation plainly flouts clear and

---

[22]   Respectfully, this is not a case in which the EA's judicial forum selection clause and the SPA's arbitration clause can be read as "complementary" to each other – with the EA simply offering a forum for actions to compel arbitration or to confirm or challenge arbitral awards.  If the EA's forum selection clause were intended to have so limited an effect, it would make no sense for the Parties under the EA to have "waive[d] any right to a trial by jury with respect to any lawsuit or judicial proceeding arising or relating to this [Escrow Agreement]."  EA, (Ex. 4 § 12.)  Petitions to compel arbitration or enforce awards afford no right of jury trial, and as such, in order for that language to be given any meaning, it must be that the Parties intended to submit substantive disputes involving the EA (not just enforcement actions) to judicial, not arbitral, resolution.  *Cf. Offshore Exploration & Production LLC v. Morgan Stanley Private Bank, N.A.*, 13 Civ. 3537 (JGK), 2013 WL 6230324, at *8-9 (S.D.N.Y. Dec. 2, 2013) (citing *Bank Julius Bank & Co. v. Waxfield Ltd.*, 424 F.3d 278, at 284-85 (2d Cir. 2005)).  In *Bank Julius*, the forum selection clause contained no such language relating to a jury waiver.  Additionally, unlike in *Bank Julius*, Offshore does not argue nor need to prove that the EA's judicial forum selection clause "effectively destroy[s]" or "vitiates" the SPA's arbitration clause.  Offshore's argument is simply that the SPA's arbitration clause does not also subsume disputes  under the EA relating to the release of funds from escrow, and where there is conflict, the EA controls.

well-established principles of New York law – which command that contracts be interpreted to give effect to all provisions and to avoid interpretations that render key provisions superfluous or void. *See, e.g.*, *In re AMR Corp.*, 730 F.3d 88, 98 (2d Cir. 2013) ("courts applying New York law construe a contract 'so as to give full meaning and effect to all of its provisions'"); *LaSalle Bank Nat'l Ass'n v. Nomura Asset Capital Corp.*, 424 F.3d 195, 206 (2d Cir 2005) (interpretations that render terms superfluous or void "will be avoided"); *Int'l Multifoods Corp. v. Commercial Union Ins.*, 309 F.3d 76, 86 (2d Cir. 2002) ("We disfavor contract interpretations that render provisions of a contract superfluous."). *See also Republic Nat'l Bank of New York v. Olshin Woolen Co. Inc.*, 304 A.D.2d 401, 402 (1st Dept. 2003) ("It is well settled that a court may not, under the guise of interpretation, fashion a new contract for the parties by. . . *excising terms* and conditions . . . ."). The Tribunal's ruling so clearly contravenes these well-settled interpretative rules that the only possible inference is that the Tribunal "intentionally" ignored controlling principles of New York contract law,[23] warranting vacatur for manifest disregard of the law. *Porzig*, 497 F.3d at 139 (vacating for manifest disregard where award conflicted with "settled" jurisprudence); *Dewan v. Walia*, No. 12–2175, 2013 WL 5781207 (4th Cir. Oct. 28, 2013) (vacating arbitral award for manifest disregard of the law where arbitrators' interpretation of release language functionally and impermissibly "rewro[te]" the contract).

---

[23] Arbitrators "intentionally" disregard controlling law, where, as here, "the arbitrator[s] must have known of [the law's] existence, and its applicability to the problem" before them, yet decline to apply it. *Duferco Int'l Steel Trading v. T. Klaveness Shipping A/S*, 333 F.3d 383, 389-90 (2d Cir. 2003). In determining arbitrators' awareness of the law, courts may impute to arbitrators knowledge of governing law identified by the parties to the arbitration. *Id*. Here, Offshore alerted the Tribunal to these basic precepts of New York law. *See, e.g.*, Ex. 14, at 6 (Tribunal's attempt to "rewrite" the terms of the parties' agreements "is prohibited by New York law") (citing, *Vanship Holdings Ltd. v. Energy Infrastructure Acquisition Corp.*, 65 A.D.3d 415) (1st Dept. 2009); *see also* Ex. 10 at ¶¶ 32 n.28; 25 n29. Additionally, courts may "infer knowledge and intentionality on the part of the arbitrator" where an award evidences an "an error that is so obvious that it would be instantly perceived as such by the average person qualified to serve as an arbitrator." *Id*. The law of contract interpretation in New York is so basic and well-settled, that, even had Offshore not alerted the Tribunal to it, the average person qualified to be an arbitrator in this instance – let alone the three New York qualified lawyers who were sitting as arbitrators in this matter (Ex. 15) – would nevertheless be deemed to have known about it. *Defurco*, 333 F.3d at 390.

**IV.   IN THE ALTERNATIVE, THE INTERIM AWARDS SHOULD BE REMANDED BECAUSE THE TRIBUNAL FAILED TO ADDRESS CRUCIAL ISSUES**

Alternatively (and without waiver of any of Offshore's arguments in opposition to confirmation or in support of vacatur advanced above), Offshore respectfully submits that rather than granting confirmation, this Court should first remand the Interim Awards to the Tribunal to obtain its ruling on two key issues submitted by Offshore, but not decided in the Interim Awards.

Courts have routinely recognized the power to remand an award to the arbitrators if an award is unclear, incomplete or the tribunal has failed to decide issues that have been submitted by the parties for review.  *See, e.g., E.I. Dupont De Nemours & Co. v. Jo Tankers, B.V.*, 172 F. Supp. 2d 405, 407 (S.D.N.Y. 2001) (Koeltl, J.) (noting that Court had remanded award to tribunal for clarification on unclear point before deciding enforcement petitions); *Bell Aerospace Co. Div. of Textron, Inc. v. Local 516 Int'l Union*, 500 F.2d 921, 923 (2d Cir. 1974) (vacating confirmation of award and remanding to arbitrators for clarification because "[c]ourts will not enforce an award that is *incomplet*e, ambiguous, or contradictory"); *M&C Corp. v. Erwin Behr BmbH & Co.*, No. 9107410 (E.D. Mich., 30 March 2001) (remanding ICC award to arbitrator, on basis that award did not "*fully adjudicate an issue that had been submitted*") (Ex. 16).[24]

Offshore directly and repeatedly asked that the Tribunal resolve whether (assuming the Tribunal granted Purchaser's application to direct Offshore to make payment of the Interim Award from new funds), Section 3 of the EA would operate to require Purchaser to authorize a corresponding release of funds from escrow to Offshore.  *See* Ex. 16, at 7-8; Ex. 10, at 17-20.  It

---

[24]   *See also Americas Ins. Co. v. Seagull Compania Naviera, S.A.*, 774 F.2d 64, 67 (2d Cir. 1985) (remanding to arbitrators to determine whether arbitrators intended to permit setoff of award and observing that "court should not attempt to enforce an award that is ambiguous or indefinite"); *Olympia & York Florida Equity Corp. v. Gould,* 776 F.2d 42, 45-46 (2d Cir. 1985) (remand to arbitrators was appropriate where award was ambiguous with respect to arbitrators' intent with respect to particular contingency, and thus did not constitute "a mutual, final, and definite award upon the subject matter submitted" within the meaning of the precursor to § 10(a)(4) and noting that such remand "provides an expeditious means for dealing with what appears to have been a *casus omissus* in the Award").

did so while maintaining its objection that the Tribunal refrain from deciding any of the escrow release issues that touch upon the EA.  The Tribunal, however, failed to decide this question either in the SIA, or its order following Offshore's Article 30 petition.  (Exs. 2, 11.)[25]   By refusing to address this issue submitted to it, the Tribunal has created the untenable situation whereby it has ordered Offshore to pay over $75 million to Purchaser from fresh funds, without a determination as to whether Offshore should be entitled under Section 3 of the EA to a corresponding release of funds from escrow.  As noted above, the Tribunal also failed to address whether there is a discrepancy or inconsistency between the dispute resolution provisions of the EA and SPA as it relates to the Parties' dispute concerning escrow release.  Offshore maintains that such a discrepancy exists and must be resolved in favor of the EA.  Because these critical issues were left undecided, in the event this Court fails to deny confirmation or grant vacatur, this Court should, at a minimum, remand this matter to the Tribunal with instructions to rule on Offshore's claims regarding the discrepancy between the EA and SPA's dispute resolution clauses and those arising under EA § 3.[26]

And, finally, if this Court were to declare that the Interim Awards are "final" for purposes of FAA enforcement, then it should either decide the issue of whether a "final" award is subject to escrow release as argued by Offshore or it should remand with instructions that the Tribunal decide this question, which, as noted above, the Tribunal left "open" for future adjudication.

---

[25]   In opposing Offshore's Article 30 Petition, Purchaser argued that the Tribunal had addressed and "implicitly rejected" Offshore's claim that Section 3 of the EA requires that Purchaser authorize the release to Offshore from escrow of any funds Offshore may be ordered to pay from non-escrow funds to satisfy the Interim Award. (Ex. 13, at 3-4.) There is, however, no basis for Purchaser' contention. The SIA offers no discussion of Offshore's claim that Section 3 would necessitate a release to it from escrow in an amount corresponding to any payment made from new funds. And the portion of the SIA quoted by Purchaser as allegedly evidencing the Tribunal's "implicit" consideration of Offshore's claim, discusses Section 8.6 of the SPA, exclusively, and makes no reference whatsoever to any provisions of the EA. *Id.*

[26]   The fact that the Interim Awards failed to resolve this (and other critical issues) impacting Offshore's potential VAT liability that Offshore submitted for the Tribunal's decision, also reinforces Offshore's position that the Interim Awards were not- and should not be interpreted as – final, confirmable awards. *See* Section I, *supra*.

## CONCLUSION

For the foregoing reasons, Offshore respectfully requests that this Court deny Purchaser's Petition to Confirm the Awards and, in the event that the Court determines the Supplemental Interim Award sufficiently final for enforcement, that the Court grant Offshore's Cross-Petition To Vacate the Award.

DATED:       New York, New York
             February 28, 2014

                        QUINN EMANUEL URQUHART &
                        SULLIVAN, LLP


                        By:    /s/ Peter E. Calamari
                              Peter E. Calamari
                              petercalamari@quinnemanuel.com

                              Julia J. Peck
                              juliapeck@quinnemanuel.com

                              51 Madison Avenue, 22nd Floor
                              New York, New York  10010
                              (212) 849–7000

                              David M. Orta
                              davidorta@quinnemanuel.com
                              *pro hac vice pending*

                              Derek L. Shaffer
                              derekshaffer@quinnemanuel.com
                              *pro hac vice pending*

                              777 6th Street NW, 11th Floor
                              Washington, DC 20001
                              (202) 538-8000

                              *Attorneys for Respondents Offshore*
                              *Exploration and Production, LLC*

26