**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

―――――――――――――――――――――――――――

**ECOPETROL S.A., and KOREA NATIONAL**
**OIL CORPORATION,**

　　　**Petitioners and Cross-Respondents,**

　　　　　**- against –**

**OFFSHORE EXPLORATION AND PRODUCTION**
**LLC,**

　　　**Respondent and Cross-Petitioner.**

―――――――――――――――――――――――――――

**14 Civ. 529 (JGK)**

**OPINION AND ORDER**

**JOHN G. KOELTL, District Judge:**

　　　The pending petitions in this case arise out of a Stock
Purchase Agreement governing the sale of certain entities by
Respondent Offshore Exploration and Production, LLC
("Offshore"), to Petitioners, Ecopetrol S.A. ("Ecopetrol") and
Korea National Oil Corporation ("KNOC").  The Stock Purchase
Agreement requires that Offshore hold Ecopetrol and KNOC
(together, the "Purchasers") harmless against various taxes
assessed against the entities that the Purchasers acquired.  The
Stock Purchase Agreement also requires that Offshore pay any
taxes that the acquired entities contest prior to or upon the
commencement of any contest proceedings, and that the parties
arbitrate disputes arising out of or related to the Stock
Purchase Agreement.

　　　After Offshore objected to indemnification claims for over
$75 million in tax liabilities assessed against an entity that
the Purchasers acquired pursuant to the Stock Purchase

1

Agreement, the parties arbitrated Offshore's liability under the Stock Purchase Agreement.  On April 15, 2013, the arbitral panel issued an Interim Award requiring that Offshore reimburse the Purchasers for the full amount of those indemnification claims. Offshore attempted to satisfy the Interim Award with funds placed in escrow pursuant to the Stock Purchase Agreement; however, the Purchasers objected and sought a supplemental award declaring that Offshore's attempt to satisfy the Interim Award with escrowed funds was ineffective.  On December 3, 2013, the arbitral panel issued a Supplemental Interim Award concluding that Offshore was not permitted to satisfy the Interim Award with escrowed funds.

The Purchasers now seek to confirm the Interim Award and the Supplemental Interim Award, and to have the awards entered as a judgment of this Court under the United Nations Convention on the Recognition and Enforcement of Foreign Arbitral Awards (the "Convention"), and the Federal Arbitration Act ("FAA"), 9 U.S.C. § 207.  Offshore opposes confirmation of both arbitral awards, and also petitions to vacate the Supplemental Interim Award.

This Court has jurisdiction under the Convention, 9 U.S.C. § 203, and under 28 U.S.C. § 1332 based on diversity of citizenship.  For the reasons explained below, the Purchasers' petition to confirm the Interim Award and Supplemental Interim

Award is **granted**, and Offshore's cross-petition to vacate the Supplemental Interim Award is **denied**.

I.

The Court assumes the parties' familiarity with the factual background and procedural history set forth in connection with the parties' previous cross-motions for declaratory judgment and for a stay pending arbitration in <u>Offshore Exploration & Prod. LLC v. Morgan Stanley Private Bank, N.A.</u>, 986 F. Supp. 2d 308 (S.D.N.Y. 2013) ("<u>Offshore I</u>").  The following facts are accepted as true for purposes of the pending motions.

A.

On December 29, 2008, Offshore entered into a Stock Purchase Agreement with the Purchasers.  Pursuant to the Stock Purchase Agreement, Offshore sold to the Purchasers all of the issued and outstanding common stock of its subsidiary, Offshore International Group, Inc., and each of Offshore International Group's subsidiaries.  Under the Stock Purchase Agreement, Offshore must "indemnify and defend the Purchaser Indemnitees and hold the Purchaser Indemnitees harmless from and against" various taxes that the subsidiaries might owe.  (Stock Purchase Agreement ("SPA") § 7.4(a).)  The Stock Purchase Agreement also states that if contested taxes "must be paid under applicable Law prior to or upon commencement of a contest proceeding,

3

[Offshore] shall pay such Taxes to the applicable Governmental Authority prior to or upon commencement of such proceeding." (SPA § 7.4(d).)

In order to secure the Purchasers' potential indemnification claims under the Stock Purchase Agreement, the Purchasers delivered $150 million of their $1.2 billion purchase price to an escrow agent: Morgan Stanley Trust, N.A.[1] ("Morgan Stanley"). (First Amendment to the SPA § 2.3(b)(i).)[2] The Purchasers may apply the escrowed funds to various indemnification claims arising under the Stock Purchase Agreement and funds are to be disbursed "in accordance" with the terms of the Escrow Agreement to which Offshore, the Purchasers, and Morgan Stanley were parties. (First Amendment to the SPA § 2.3(b)(i).) The Stock Purchase Agreement requires that the escrow period be extended and that an adequate amount in escrow be retained to cover any indemnification claim timely asserted. (First Amendment to the SPA § 2.3(b)(i).)

Additional rights and procedures regarding disbursement from the escrow are enumerated in Section 8.6 of the Stock

---

[1] Morgan Stanley Private Bank, N.A., has succeeded Morgan Stanley Trust, N.A.

[2] The First Amendment to the SPA modifies only select provisions of the SPA.  Where the First Amendment to the SPA modifies a provision cited in this Opinion, citation to the First Amendment to the SPA is indicated.

Purchase Agreement.  That section provides that "[b]y written notice to Seller specifying in reasonable detail the basis for set-off, Purchaser may assert a claim to set off any amount to which it is or[,] if Seller has objected[,] has been determined to be[,] entitled under Article 7 and . . . Article 8 against the Escrow Amount."  (SPA § 8.6.)  Section 8 also provides that "[n]either the exercise of nor the failure to exercise such right of set-off will constitute an election of remedies or limit Purchaser in any manner in the enforcement of any other remedies that may be available to it."  (SPA § 8.6.)

In the event that any party breaches its obligations under the Stock Purchase Agreement, the Agreement provides to the non-breaching party "the right to seek specific performance of this Agreement without the necessity of proving the inadequacy of money damages as a remedy."  (SPA § 8.4.)  Additionally, the Stock Purchase Agreement contains a broad, mandatory arbitration clause providing that:

> Any dispute, controversy or Action arising out of or relating to this Agreement, or the breach thereof . . . shall be determined by arbitration administered by the American Arbitration Association in accordance with its International Arbitration Rules.

(SPA § 10.7(a).)  The Stock Purchas Agreement also provided for the enforcement of provisional remedies granted by the arbitrators:

> [T]he arbitrators shall have the power to grant any
> provisional measures that they deem appropriate
> including but not limited to provisional injunctive
> relief, and any provisional measures ordered by the
> arbitrators may, to the extent permitted by applicable
> law, be deemed to be a final award on the subject
> matter of the measures and shall be enforceable as
> such.

(SPA § 10.7 (b).)

                              B.

Offshore and the Purchasers signed the First Amendment to
the Stock Purchase Agreement as of February 5, 2009.  (First
Amendment to the SPA.)  Offshore, the Purchasers, and Morgan
Stanley also executed the Escrow Agreement as of February 5,
2009.  The Escrow Agreement provides procedures for the
disbursement of funds held in escrow (the "Escrow Amount").
Disbursement must occur if any Purchaser submits a Purchaser's
Indemnity Certificate and Offshore does not object within thirty
days.  (Escrow Agreement § 3.)  However, if Offshore disputes a
claim made against the Escrow Amount, Morgan Stanley is
prohibited from disbursing funds:

> except in accordance with either (i) written
> instructions executed both by an authorized officer of
> Purchaser and by an authorized officer of Seller
> ("**_Joint Instructions_**"), or (ii) a certificate
> delivered by any Purchaser to the Escrow Agent,
> executed by an authorized officer of such Purchaser (a
> "**_Final Award Certificate_**") . . . .

(Escrow Agreement § 3.)  A Final Award certificate must include
the amount of the contested amount to which the Purchaser is

entitled and an "Arbitral Award" confirming the Purchaser's entitlement.  (Escrow Agreement § 3.)  Morgan Stanley is also required to release escrow funds to Offshore when any Purchaser "delivers to the Escrow Agent a certificate of such Purchaser . . . [stating] that an Indemnification Item, in a specific amount, was satisfied by Seller independent of this Indemnification Escrow Agreement . . . ."  (Escrow Agreement § 3.)

The Escrow Agreement provides that:

> In the event that the Escrow Agent shall be uncertain
> as to its duties or rights . . . it shall be entitled
> to refrain from taking any action . . . until it shall
> be directed otherwise in writing by all of the other
> Parties hereto, by a final order or judgment of a
> court of competent jurisdiction or, subject to Section
> 3 of this Indemnification Escrow Agreement, a final
> decision of an arbitral tribunal pursuant to Section
> 10.7 of the Stock Purchase Agreement.

(Escrow Agreement § 5(b).)

The Escrow Agreement contains a non-exclusive forum selection clause providing that each party "irrevocably waives any objection on the grounds of venue, forum non-conveniens or any similar grounds and irrevocably consents to service of process by mail or in any other manner permitted by applicable law and consents to the jurisdiction of the courts located in the State of New York."  (Escrow Agreement § 12.)  The Agreement also contains a merger clause, which states that "[i]n the event of any discrepancy or inconsistency between the provisions of

7

this Indemnification Escrow Agreement and the provisions of the Stock Purchase Agreement, the provisions [in the Escrow Agreement] shall prevail and be deemed to reflect the intent and understanding of the Parties hereto." (Escrow Agreement § 12.) Any funds remaining in escrow, and not required to be retained in escrow pursuant to Section 2.3(b)(i) of the Amended Stock Purchase Agreement, were to be released to Offshore on February 5, 2011. (Escrow Agreement § 4.) Both the Escrow Agreement and Stock Purchase Agreement are to be interpreted under New York law. (Escrow Agreement § 12; SPA § 10.6.)

C.

Among the Offshore subsidiaries that the Purchasers acquired under the Stock Purchase Agreement is a Peruvian oil company, Savia Peru S.A. ("Savia").

Between February 25, 2010, and January 28, 2011, the Purchasers made several indemnification claims under Section 7.4 of the Stock Purchase Agreement for tax liabilities that Savia allegedly owed to the Peruvian government. The Purchasers' indemnification claims ultimately totaled $75,308,179.03. With respect to each claim, the Purchasers delivered to Morgan Stanley a claim certificate that elaborated the Purchasers' indemnification claim and requested that Morgan Stanley promptly contact Offshore to ascertain whether Offshore objected to the

Purchasers' disbursement request.  Offshore objected to each disbursement request because it contested whether the Purchasers' claims were valid in light of the Purchasers' alleged failure to keep Offshore informed of the Peruvian tax proceedings, and to tender to Offshore control of the Peruvian tax proceedings.  (Cross-Petition to Vacate the Supplemental Interim Award ("Cross-Petition") ¶ 10.)

After the Purchasers, through Savia, paid $75,308,179.03 to the Peruvian Government, the Purchasers sought through arbitration an interim award ordering Offshore to specifically perform its alleged duty to reimburse the Purchasers for that amount.  On April 15, 2013, the arbitration panel issued an interim award (the "Interim Award") ordering Offshore to pay to the Purchasers within thirty days the full amount that the Purchasers sought.  (Chesin Decl., Ex. A ("Interim Award") at 7.)  While the award required "reimbursement," it did not specify whether reimbursement was to come from the Escrow Amount.  (Interim Award at 7.)

Abandoning its prior objections, on May 2, 2013, Offshore instructed Morgan Stanley to release $75,308,179.03 from the Escrow Amount to the Purchasers.  With the benefit of the arbitration award, the Purchasers no longer sought to have that amount paid from the Escrow Amount.  On May 10, 2013, the Purchasers objected to the disbursement of funds from the Escrow

Amount.  According to the Purchasers, Morgan Stanley was
prohibited from disbursing funds because, under Section 3 of the
Escrow Agreement, Offshore's initial objection to disbursement
of funds from the Escrow Amount precluded Morgan Stanley from
releasing any funds until the Purchasers submitted Joint
Instructions with Offshore or the Purchasers delivered a Final
Award Certificate.  The Purchasers maintained that they were
under no obligation to submit Joint Instructions or to deliver a
Final Award Certificate because, under Section 8.6 of the Stock
Purchase Agreement, the Purchasers initial decision to seek
payment from the Escrow Amount did not constitute an election of
remedies or in any way limit the remedies that the Purchasers
were entitled to pursue.  The Purchasers also argued that paying
the Interim Award from the Escrow Amount would deplete the
Escrow Amount and would leave the Escrow Amount substantially
below the amount of unresolved indemnification claims.

Because the Purchasers declined to provide Morgan Stanley
with Joint Instructions or a Final Award Certificate, Morgan
Stanley claimed that it was "uncertain as to its duties or
rights under the Escrow Agreement" and declined to release the
$75,304,179.03 to the Purchasers.  As a result, Offshore
commenced an action in this Court on May 24, 2013, seeking a
declaratory judgment that Morgan Stanley was obliged to release
the $75,308,179.03 to the Purchasers.  The Purchasers filed a

cross-motion to stay or dismiss the declaratory judgment action pending arbitration.

Shortly thereafter, on June 3, 2013, the Purchasers sought supplemental relief from the arbitral panel. (Petition to Confirm Arbitration Awards ("Petition to Confirm") ¶ 20.) Specifically, the Purchasers requested that the arbitral panel declare ineffective the Seller's attempt to satisfy the Interim Award with escrowed funds. (Petition to Confirm ¶ 20.)

                              D.

On November 29, 2013, this Court granted the Purchasers' motion to stay the declaratory judgment action in favor of the proceedings for supplemental relief pending before the arbitral panel and denied without prejudice Offshore's motion for summary judgment for a declaration that Morgan Stanly was required to release the aforementioned $75.3 million to the Purchasers. Offshore I, 986 F. Supp. 2d at --.

In a supplemental award dated December 1, 2013, (the "Supplemental Interim Award"), the arbitral panel found that it had jurisdiction to decide whether Offshore was permitted to satisfy the Interim Award from the Escrow Amount, and concluded that Offshore was not permitted to do so. (Chesin Decl., Ex. B ("Supplemental Interim Award"), at 7-8.)

After issuing the Supplemental Interim Award, the arbitral panel has held hearings on the merits of the parties' dispute with respect to VAT liability.  (Cross-Petition ¶ 18)  In those proceedings, Offshore contends that the Purchasers breached their obligation under Section 7.1(d) of the Stock Purchase Agreement to cede control of the Peruvian tax proceedings to Offshore, that Offshore is entitled to offset any amounts refunded by the Peruvian government to Savia against the Interim Award, and that a final award on any VAT claims is payable from the escrow.  (Cross-Petition ¶ 18; SPA § 7.1(d).)  The Purchasers dispute each of Offshore's claims.  (Cross-Petition ¶ 18.)  The parties also dispute whether any damages, fees, or interest are due to the Purchasers.  (Cross-Petition ¶ 18.)  The arbitral panel has not rendered a merits decision to date.

The Purchasers now seek to confirm the Interim Award and Supplemental Interim Award (together, the "Interim Arbitral Awards").  Offshore opposes confirmation of both awards and seeks vacatur of the Supplemental Interim Award.


II.

This action arises under the Convention because the agreements at issue are commercial and not entirely between citizens of the United States.  9 U.S.C. § 202; see also Republic of Ecuador v. Chevron Corp., 638 F.3d 384, 391 (2d Cir.

12

2011).  Where, as here, "an arbitral award falling under the
Convention is made," any party to the arbitration may apply to
any court with jurisdiction for an order confirming the award.
9 U.S.C. § 207.

In such case, "[t]he court shall confirm the award unless
it finds one of the grounds for refusal or deferral of
recognition or enforcement of the award specified in [Article V]
of the] . . . Convention."  Id.  Article V of the Convention
"provides the exclusive grounds for refusing confirmation under
the Convention."  Yusuf Ahmed Alghanim & Sons v. Toys "R" Us,
Inc., 126 F.3d 15, 20 (2d Cir. 1997) (citing Convention, art.
V).  Article V of the Convention provides in relevant part:

> (1) Recognition and enforcement of the award may be
> refused, at the request of the party against whom it
> is invoked, only if that party furnishes to the
> competent authority where the recognition and
> enforcement is sought, proof that . . . (c) The Award
> deals with a difference not contemplated by or not
> falling within the terms of the submission to
> arbitration, or it contains decisions on matters
> beyond the scope of the submission to
> arbitration . . . ; or (e) The award has not yet
> become binding on the parties, or has been set aside
> or suspended by a competent authority of the country
> in which, or under the law of which, that award was
> made.

Convention art. V(1); see also Yusuf Ahmed Alghanim & Sons, 126
F.3d at 20.

The Court of Appeals for the Second Circuit has interpreted
Article V(1)(e) "to allow a court in the country under whose law

13

the arbitration was conducted to apply domestic arbitral law . . . to a motion to set aside or vacate that arbitral award." Yusuf Ahmed Alghanim & Sons, 126 F.3d at 21. Thus, Chapter 1 of the FAA and all of its grounds, express and implied, for modification and vacatur of arbitral awards apply to Offshore's objections. See id. at 23 ("The Convention specifically contemplates that the state in which, or under the law of which, the award is made, will be free to set aside or modify an award in accordance with its domestic arbitral law and its full panoply of express and implied grounds for relief." (citing Convention, art. V(1)(e))); see also Seed Holdings, Inc. v. Jiffy Int'l AS, -- F. Supp. 2d --, 2014 WL 1141717, at *10 (S.D.N.Y. Mar. 21, 2014).

In this case, Offshore argues that the Interim Arbitral Awards have not yet become binding on the parties, and thus that the awards cannot be confirmed under Article V(1)(e). Offshore also argues that the Supplemental Interim Award addresses issues not submitted to arbitration, and thus that the Supplemental Interim Award should be vacated under Article V(1)(c), 9 U.S.C. § 10(a)(4), and for manifest disregard of the law. Offshore's arguments are considered in turn.

14

A.

Offshore first argues that the Interim Arbitral Awards cannot be confirmed because they are not final awards.

Under the Convention, district courts lack authority to confirm arbitral awards that are not final awards.  See, e.g., Metallgesellschaft A.G. v. M/V Capitan Constante, 790 F.2d 280, 283 (2d Cir. 1986); Michaels v. Mariforum Shipping, S.A., 624 F.2d 411, 414 (2d Cir. 1980); Daum Global Holdings Corp. v. Ybrant Digital Ltd., No. 13cv3135, 2014 WL 896716, at *2 (S.D.N.Y. Feb. 20, 2014).  However, "an award which finally and definitely disposes of a separate independent claim may be confirmed although it does not dispose of all claims that were submitted to arbitration."  Metallgesellschaft A.G., 790 F.2d at 283.  In other words, an award is final if it resolves the rights and obligations of the parties definitively enough to preclude the need for further adjudication with respect to the issue submitted to arbitration.  See Rocket Jewelry Box, Inc. v. Noble Gift Packaging, 157 F.3d 174, 176 (2d Cir. 1998) (per curiam).

These standards apply with equal weight to awards labelled interim awards.  See Zeiler v. Deitsch, 500 F.3d 157, 169 (2d Cir. 2007).  In Zeiler, the parties disputed whether eight "interim" arbitral awards that required accounting with respect to joint property were final for purposes of confirmation.  Id.

15

at 168.  The Second Circuit Court of Appeals held that the interim awards finally and conclusively disposed of a separate claim, and were therefore final for purposes of confirmation, because they "require[d] specific action" and did not serve "[as] a basis for further decisions by the arbitrators."  Id. at 169.

In this case, both Interim Arbitral Awards required specific action.  The Interim Award required that Offshore tender payment of $75,308,179.03 to the Purchasers within thirty days of issuance of the Interim Award, (Interim Award at 7; Supplemental Interim Award ¶ 2), and the Supplemental Interim Award required that Offshore satisfy the Interim Award with funds not derived from the Escrow Amount.  (Supplemental Interim Award ¶ 19.)

Neither award will serve as a basis for further decisions by the arbitrators.  Indeed, the arbitral panel made clear that the Interim and Supplemental Interim Awards would in no way prejudice the parties' arguments with respect to ultimate liability.  The Interim Award stated:

> This Interim Award does not in any way resolve the underlying merits of the dispute among the parties, including, without limitation, whether Offshore would ultimately be entitled to, among other relief, the return of the amounts paid pursuant to this Order by reason of [the Purchasers'] breach of the SPA, or otherwise.

(Interim Award at 7.)  Similarly, the arbitral panel reiterated
in its Supplemental Interim Award that its decision with respect
to Offshore's obligation to pay initially for taxes assessed
against Savia by government authorities had no bearing on the
ultimate issue of liability for Savia's tax obligations.
(Supplemental Interim Award at 1.)

The Interim Arbitral Awards thus required specific action,
resolved the rights and obligations of the parties with respect
to the interim period at issue, and did so without in any way
affecting future decisions of the arbitral panel.  Accordingly,
the Interim Arbitral Awards are final and confirmable awards.
Zeiler, 500 F.3d at 169; Daum Global Holdings, 2014 WL 896716,
at *2-3 (holding that interim award was final and confirmable
where award required immediate payment and did not bear on
subsequent arbitration proceedings).

The terms of the Stock Purchase Agreement underscore that
the Interim Arbitral Awards are "specific and final and [do] not
need to be followed by a concluding award."  Zeiler, 500 F.3d at
169.  Section 7.4(a) of the Stock Purchase Agreement provides
that Offshore must hold the Purchasers harmless from any taxes
assessed against the entities that the Purchasers acquired
pursuant to the Stock Purchase Agreement.  (SPA § 7.4(a)).
Section 7.4(d) of the Stock Purchase Agreement provides that if
contested taxes "must be paid under applicable Law prior to or

17

upon commencement of a contest proceeding, [Offshore] shall pay such Taxes to the applicable Governmental Authority <u>prior to or upon commencement</u> of such proceeding."  (SPA § 7.4(d) (emphasis added).)

As the arbitral tribunal observed, "[i]t is clear from a reading of these two Sections that the burden of initial payment [with respect to taxes assessed against Savia by government authorities] is upon [Offshore] and not the Purchaser[s]."  (Interim Award at 5.)  It is equally clear that, under these provisions, the issue of initial payment is separate and independent from the issue of ultimate liability.  As the arbitral panel observed, "[i]f a dispute arises over the matter [of initial payment] . . . then [Offshore] must nonetheless pay the tax authorities while that dispute is pending."  (Interim Award at 5.)

The Stock Purchase Agreement also contemplates discrete provisional relief allowing an arbitral panel to enforce separately and independently from issues of ultimate liability Offshore's obligation to pay initially taxes assessed against Savia by government authorities.  Section 8.4 of the Stock Purchase Agreement provides that, in the event that any party breaches it obligations under the Stock Purchase Agreement, the non-breaching party may "seek specific performance of [the Stock Purchase Agreement] without the necessity of proving the

inadequacy of money damages as a remedy." (SPA § 8.4.) Section 10.7 of the Stock Purchase Agreement provides that the arbitral panel may "grant any provisional measures that they deem appropriate" and that "any provisional measures ordered by the arbitrators may . . . be deemed to be a final award on the subject matter of the measures and shall be enforceable as such." (SPA § 10.7(b).)

Pursuant to Sections 8.4 and 10.7(b), the parties empowered the arbitral panel to grant provisional equitable relief deemed final on the subject matter at issue. This grant of authority establishes that the parties intended provisional awards like the Interim Arbitral Awards to be final. See, e.g., Daum Global Holdings, 2014 WL 896716, at *3 (concluding that interim award was final and confirmable in part because award was issued pursuant to provision labelling any award issued by arbitrator final).

The arbitral panel issued Interim Arbitral Awards requiring that Offshore make an initial payment of $75,308,179.03 within thirty days and requiring that Offshore make payment without relying on escrowed funds, in order to satisfy its obligations under Section 7.4 of the Stock Purchase Agreement. (Interim Award at 7; Supplemental Interim Award ¶¶ 2, 19.) These awards definitively resolved the rights and obligations of the parties with respect to their subject matter, namely, Offshore's

liability to pay for Savia's tax obligations under Section 7.4(d) pending a final decision.[3]  Accordingly, the Interim Arbitral Awards must be considered final for purposes of confirmation.  See, e.g., Zeiler, 500 F.3d at 169; The Home Ins. Co. v. RHA/PA Nursing Homes, Inc., 127 F. Supp. 2d 482, 487-88 (S.D.N.Y. 2001) (arbitral award providing interim relief was final and confirmable because it entitled party to possession of sum pending final arbitration on merits); S. Seas Navigation Ltd. of Monrovia v. Petroleos Mexicanos of Mex. City, 606 F. Supp. 692, 694 (S.D.N.Y. 1985) (Weinfeld, J.,) (arbitral award providing interim equitable relief was final and confirmable because it clarified parties' rights pending final arbitration on merits).

If provisional relief could not be enforced, if would be ineffective.  As Judge Weinfeld once explained:

> That the arbitrators labeled their decision an "interim" award cannot overcome the fact that if an arbitral award of equitable relief based upon a finding of irreparable harm is to have any meaning at all, the parties must be capable of enforcing or vacating it at the time it is made.  Such an award is not "interim" in the sense of being an

---

[3] It is plain that the arbitral panel believed that its Interim Award definitively resolved the rights and obligations of the parties with respect to Offshore's obligation to pay initially Savia's tax liability because, in its Supplemental Interim Award, the arbitral panel stated that an order requiring Offshore to pay $75,308,179.03 would be redundant in light of the relief that the Purchasers obtained in the panel's Interim Award.  See Supplemental Interim Award ¶ 19.

"intermediate" step toward a further end.  Rather, it is an
end in itself, for its very purpose is to clarify the
parties' rights in the "interim" period pending a final
decision on the merits.

Id.

    Offshore relies on several cases to argue that the Interim
Arbitral Awards are not final because they leave open to further
adjudication issues regarding Offshore's ultimate liability for
the tax obligations at issue.[4]  This argument is without merit.

    As an initial matter, Offshore's argument that the Interim
Award is not a final award is inconsistent with Offshore's prior
representations to this Court.  In seeking a declaratory
judgment that Morgan Stanley was required to release from the
Escrow Amount funds sufficient to satisfy the Interim Award,
Offshore represented that "[t]here is simply no further action
for the Tribunal to take with its [Interim] Award, which

---

[4] Although Offshore now concedes that it must indemnify the
Purchasers for Savia's tax obligations, (Chesin Decl., Ex. G at
4, 48), the parties continue to dispute several issues that bear
on Offshore's ultimate liability, including whether Offshore's
liability is subject to abatements or set-offs in the event that
Peruvian authorities reimburse Savia for taxes paid in the
relevant fiscal years, (Interim Award at 7), whether Offshore
may satisfy any final award using escrowed funds, (Supplemental
Interim Award at 8), and whether the Purchasers are entitled to
any further damages, interest, or costs, (Supplemental Interim
Award at 10.)  The possibility that Offshore's ultimate
liability may be adjusted to account for any reimbursements that
Savia receives does not in any way effect the determination that
the arbitral panel's Interim Arbitral Awards are final for
purposes of confirmation.  See Daum Global Holdings, 2014 WL
896716, at *2-*3 (possibility of future adjustments to liability
or damages does not effect finality of immediately payable
awards).

establishes Purchasers' entitlement to a sum certain that
Offshore acknowledges to be final." (Chesin Decl., Ex. E at
19.) Offshore now argues that its prior representations refer
to finality for purposes of the Stock Purchase and Escrow
Agreements, rather than the FAA. However, in seeking
declaratory judgment, Offshore argued that the Interim Award was
final because it finally and conclusively resolved a separate
and independent claim, with citation to Zeiler, 500 F.3d at 169.
(Chesin Decl., Ex. E at 19.) Offshore's reliance for purposes
of its declaratory judgment action on authorities governing
finality under the FAA belies the distinction that Offshore now
proffers between finality for purposes of its agreements with
the Purchasers and finality for purposes of the FAA.

In any event, the authorities upon which Offshore relies
are inapposite because they concern awards that resolved issues
of liability without resolving the issue of damages, and
therefore failed to finally and definitely dispose of the
relevant claims. See, e.g., Michaels, 624 F.2d at 413-414
(award that partially resolved liability but did not resolve
damages did not finally and definitely dispose of claims); Kerr-
McGee Ref. Corp. v. M/T Triumph, 924 F.2d 467, 471 (2d Cir.
1991) (award that resolved liability but did not fully resolve
issue of damages did not finally and definitely dispose of
claims); Emp's Surplus Lines Ins. Co. v. Global Reins. Co., No.

07cv2521, 2008 WL 337317, *5 (S.D.N.Y. Feb. 6, 2008) (same).
Nothing remains to be decided with respect to Offshore's
obligation under the Stock Purchase Agreement to pay initially
the taxes assessed against Savia, and to do so without drawing
on the Escrow Amount.  Accordingly, the Interim Arbitral Awards
finally and definitely dispose of a discrete and independent
claim, and may be confirmed under the Convention.[5]


                              B.

     Offshore next argues that the Supplemental Interim Award
should be vacated because the arbitral panel incorrectly
determined that it had jurisdiction over the dispute underlying
the award.[6]

_____

[5] On August 28, 2014, Offshore submitted a supplemental
declaration with twenty-two exhibits that purported to show the
submissions in the underlying arbitration in an effort to
bolster the argument that the Interim Awards were not final for
purposes of the FAA.  By stipulation the parties had agreed that
briefing on the amended petitions was to be closed on April 9,
2014.  All but five of the new exhibits were created prior to
April 9, 2014, and the submission of all these exhibits was
exceedingly untimely.  The application to supplement the record
is therefore denied.  The additional documents would, in any
event, not change the disposition of the current petitions.  The
submission does not alter the nature of the Interim Awards or
the legal principles pursuant to which the Intern Awards are
final for purposes of enforcement.

[6] Because the Second Circuit Court of Appeals has held that
Chapter 1 of the FAA and all of its grounds, express and
implied, for modification and vacatur apply under the

                              23

When parties have clearly and unmistakably submitted a disputed issue for arbitration, an arbitral panel's decision should rarely be set aside.  See, e.g., E. Assoc'd Coal Corp. v. United Mine Workers of Am., 531 U.S. 57, 62 (2000) (where parties bargain for the "arbitrator's construction of their agreement . . . courts will set aside the arbitrator's interpretation of what their agreement means only in rare instances" (citation and internal quotation marks omitted)).  In Offshore I, this Court determined that the parties clearly and unmistakably manifested their intent to submit to the arbitral panel the arbitrability of disputes that might trigger the Stock Purchase Agreement.  986 F. Supp. 2d at --.  Offshore does not dispute for purposes of this motion that the parties agreed to allow the arbitral panel to resolve issues with respect to its own jurisdiction.  (Resp. Reply Mem. at 3.)  Accordingly, the familiar and deferential standards that apply to judicial review of arbitral awards apply to review of the arbitral panel's determination that it had jurisdiction to issue the Supplemental Interim Award.  E. Assoc'd Coal, 531 U.S. at 62; see also BG Grp., PLC v. Republic of Arg., 134 S. Ct. 1198, 1210 (2014) (reviewing arbitral panel's determination that it had

---

Convention, Yusuf Ahmed Alghanim & Sons, 126 F.3d at 23, and because the parties rely on Section 10(a)(4) of the FAA in briefing the issue of vacatur, Offshore's arguments for vacatur are resolved by reference to the FAA.

jurisdiction over parties' dispute with "considerable deference" because arbitration provision in treaty committed jurisdictional determination to arbitrators).

Under the FAA, "[a] party moving to vacate an arbitration award has the burden of proof, and the showing required to avoid confirmation is very high." D.H. Blair & Co., Inc. v. Gottdiener, 462 F.3d 95, 110 (2d Cir. 2006). "Arbitration awards are not reviewed for errors made in law or fact." British Ins. Co. of Cayman v. Water St. Ins. Co., 93 F. Supp. 2d 506, 514 (S.D.N.Y. 2000). Accordingly, arbitral awards may only be vacated on extremely limited grounds. See, e.g., Hall St. Assoc's, LLC v. Mattel, Inc., 552 U.S. 576, 588 (2008); Seed Holdings, 2014 WL 1141717, at *15.

In this case, Offshore contends that the Supplemental Interim Award should be vacated because the arbitral panel "exceeded [its] powers," 9 U.S.C. § 10(a)(4), and because the arbitral panel engaged in manifest disregard of the law, Stolt-Nielsen SA v. AnimalFeeds Int'l Corp., 548 F.3d 85, 96 (2d Cir. 2008), rev'd on other grounds, 559 U.S. 662 (2010), when it determined that it had jurisdiction over the parties' dispute with respect to whether Offshore could satisfy the Interim Award with escrowed funds.

1.

Offshore contends that the Supplemental Interim Award should be vacated under Section 10(a)(4) because the arbitral panel "exceeded [its] powers" when it concluded that it had jurisdiction to issue the Supplemental Interim Award.  The Second Circuit Court of Appeals has "consistently accorded the narrowest of readings to the FAA's authorization to vacate awards pursuant to § 10(a)(4)."  Banco de Seguros del Estado v. Mut. Marine Office, Inc., 344 F.3d 255, 262 (2d Cir. 2003) (citation and internal quotation marks omitted).  "When a party seeks to vacate an arbitration award under Section 10(a)(4), the inquiry looks only to whether the arbitrator had the power, based on the submissions or the arbitration agreement, to reach a certain issue, and does not consider whether the arbitrator decided the issue correctly."  Thule AB v. Advanced Accessory Holding Corp., No. 09cv91, 2009 WL 928307, at *2 (S.D.N.Y. Apr. 2, 2009) (citation and internal quotation marks omitted); see also DiRussa v. Dean Witter Reynolds Inc., 121 F.3d 818, 824 (2d Cir. 1997).  The question for the Court is "whether the arbitrators acted within the scope of their authority, or whether the arbitral award is merely the arbitrators own brand of justice."  Banco de Seguros, 344 F.3d 255, 262 (2d Cir. 2003) (citation and internal quotation marks omitted).

i.

Offshore argues that the arbitral panel exceeded its powers when it concluded that it had jurisdiction to issue the Supplemental Interim Award under the broad arbitration clause contained in the Stock Purchase Agreement ("Section 10.7"). For reasons explained in Offshore I, this argument is without merit.

Offshore contends that Section 10.7 of the Stock Purchase Agreement does not provide the arbitral panel with jurisdiction to issue the Supplemental Interim Award because the award addresses whether Offshore is permitted to satisfy the Interim Award with escrowed funds, a question that arises exclusively under the Escrow Agreement.

In Offshore I, the Court found that Section 10.7 of the Stock Purchase Agreement is a paradigmatically broad arbitration clause, requiring arbitration of even those matters collateral to the Stock Purchase Agreement. 986 F. Supp. 2d at -- (citing Louis Dreyfus Negoce S.A. v. Blystad Shipping & Trading Inc., 252 F.3d 218, 224 (2d Cir. 2001); Collins & Aikman Prods. Co. v. Bldg. Sys., Inc., 58 F.3d 16, 20 (2d Cir. 1995)). The Court also found that the question of satisfying the Interim Award with escrowed funds implicates several provisions of the Stock Purchase Agreement, including provisions pertaining to Offshore's obligation to hold the Purchasers harmless against taxes like those at issue in the Interim Award, (SPA § 7.4(a)),

and pertaining to the election of remedies under the Stock
Purchase Agreement, (SPA § 8.6).

Offshore argues that this dispute arises entirely under
Section 3 of the Escrow Agreement.  However, it is plain that
Section 3 of the Escrow Agreement establishes only the
procedures for disbursement of funds from the Escrow Amount, and
that Section 3 does not resolve whether the Purchasers are
obliged to seek disbursement after Offshore has objected to an
initial disbursement request.  Indeed, once Offshore objected to
the Purchaser's initial requests for indemnification, Section 3
precluded disbursement absent further action by the Purchasers.[7]
See Offshore I, 986 F. Supp. 2d at --.  The Purchasers have not
taken any of the actions required for disbursement pursuant to
Section 3 because they dispute whether the Stock Purchase
Agreement requires that they accept disbursement from the Escrow
Amount.  Accordingly, the parties' dispute cannot be resolved
without reference to the Stock Purchase Agreement.

Offshore next contends, in the alternative, that Section
10.7 in the Stock Purchase Agreement does not provide the
arbitral panel with jurisdiction to issue the Supplemental
Interim Award because, to the extent that the dispute implicates

---

[7] For this reason, Offshore's reliance on Teletech Eur. B.V. v.
Essar Servs. Mauritius, 83 A.D.3d 511 (App. Div. 2011) remains
misplaced.  See Offshore I, 986 F. Supp. 2d at -- n.6.

the Stock Purchase Agreement, it presents a conflict between the
Escrow Agreement and Stock Purchase Agreement that must be
resolved exclusively under the Escrow Agreement.  According to
Offshore, this is so because the Escrow Agreement contains a
supremacy clause providing that the Escrow Agreement will govern
in the event that the terms of the Agreements conflict.  (See EA
§ 12.)

     This argument is also without merit for reasons explained
in Offshore I, namely, that Offshore has not established any
conflict between the Stock Purchase Agreement and the Escrow
Agreement.  986 F. Supp. 2d at --.  Section 3 of the Escrow
Agreement provides that when Offshore objects to a demand for
payment from the Escrow Amount, no amount may be dispensed until
the Purchasers present the escrow agent with a final award
certificate or with written instructions executed with Offshore.
With respect to the indemnification claims at issue in this
action, Offshore objected to each of the Purchasers' requests
for disbursement.  (Cross-Petition ¶ 10.)  Accordingly, no
further action is required under the Escrow Agreement until the
Purchasers take action.  Therefore, there is no conflict between
the parties' current obligations under the Escrow Agreement and
the Stock Purchase Agreement.

     Finally, Offshore contends that the arbitral panel exceeded
its powers in determining that it had jurisdiction to enter the

Supplemental Interim Award under Section 10.7 of the Stock
Purchase Agreement because the arbitration clause was superseded
by a permissive forum selection clause in the Escrow Agreement.

As this Court explained in Offshore I, courts determining
"whether an agreement to arbitrate has been supplanted by a
later accord . . . look to whether the subsequent agreement
specifically preclude[s] or provides positive assurance that a
dispute is no longer subject to arbitration." 986 F. Supp. 2d
at -- (quoting Goldman, Sachs & Co. v. Golden Empire Schs. Fin.
Auth., 922 F. Supp. 2d 435, 440 (S.D.N.Y. 2013) aff'd - F.3d -,
13-797-CV, 2014 WL 4099289 (2d Cir. Aug. 21, 2014)). In this
case, the arbitration agreement at issue contains mandatory
language, requiring that the parties arbitrate "[a]ny dispute,
controversy or Action arising out of or relating to" the Stock
Purchase Agreement. (SPA § 10.7.) The forum selection clause
in the Escrow Agreement does not contain mandatory language,
providing only that the parties "consent[ ] to the jurisdiction
of the courts located in the state of New York." (EA § 12.)

The Second Circuit Court of Appeals has held that
permissive language like that found in the forum selection
clause in the Escrow Agreement does not provide positive
assurance that the parties intended to override the broad
arbitration clause. See Bank Julius Baer & Co. v. Waxfield
Ltd., 424 F.3d 278, 284 (2d Cir. 2005), abrogated on other

grounds, <u>Goldman, Sachs & Co.</u>, 2014 WL 4099289, at *4 n.3.  The
language in the permissive forum selection clause in the Escrow
Agreement is unlike the type of mandatory judicial forum
selection that would supersede a prior mandatory arbitration
clause that covers the dispute at issue.  <u>See</u> <u>Goldman, Sachs &
Co.</u>, 2014 WL 4099289, at *4-*5.

Accordingly, the arbitral panel was well within the scope
of its authority when it concluded that the broad, mandatory
arbitration clause contained in the Stock Purchase Agreement
gave the panel jurisdiction to issue the Supplemental Interim
Award, which resolved an issue implicating several provisions of
the Stock Purchase Agreement.  Because the arbitral panel acted
within the scope of its authority in finding that it had
jurisdiction to issue the Supplemental Interim Award, the
Supplemental Interim Award cannot be vacated on the ground that
the arbitral panel exceeded its powers in so finding.  <u>See</u> <u>Banco
de Seguros</u>, 344 F.3d at 262.

ii.

Offshore next argues that the arbitral panel exceeded its
powers when it determined that it had jurisdiction to issue the
Supplemental Interim Award because the panel's jurisdictional
determination violated Article 30 of the International Centre
for Dispute Resolution ("ICDR") rules.  The Purchasers respond

31

that they did not seek relief under Article 30, and that the arbitral panel did not purport to grant relief pursuant to Article 30.  Rather, the Purchasers contend, the Supplemental Interim Award was sought and granted under Article 21 of the ICDR rules.

Article 30 of the ICDR rules provides that any party may "[w]ithin 30 days after the receipt of an award, . . . with notice to the other parties, . . . request the tribunal to interpret the award or correct any clerical, typographical, or computation errors or make an additional award as to claims presented but omitted from the award."  ICDR Rules, art. 30(1).

Article 21 of the ICDR rules provides that an arbitral panel may, "[a]t the request of any party, . . . take whatever interim measures it deems necessary, including injunctive relief and measures for the protection or conservation of property." ICDR Rules, art. 21(1) (emphasis added).

The arbitral panel issued its Interim Award on April 25, 2013.  (Orta Decl., Ex. 9 at 1.)  The Purchasers requested that the arbitral panel issue the Supplemental Interim Award more than thirty days later, on June 3, 2013.  (See Orta Decl., Ex. 9.)  According to Offshore, the Supplemental Interim Award was intended only to interpret the Interim Award.  Offshore thus contends that the arbitral panel interpreted the Interim Award

more than thirty days after the Interim Award was issued, in violation of Article 30.

The Purchasers respond, persuasively, that the Purchasers were not seeking an interpretation of the Interim Award in their supplemental petition, but rather were seeking distinct relief. While the Purchasers initially sought specific performance of Offshore's obligation to indemnify the Purchasers for Savia's VAT liabilities, as required by Sections 7.4(a) and 7.4(d) of the Stock Purchase Agreement, the Purchasers subsequently sought a determination that Offshore's attempt to comply with the Interim Award by ordering that Morgan Stanley release funds from the Escrow Amount violated other provisions of the Stock Purchase Agreement, chiefly, Sections 2.3(b)(i) and 8.6.  In order to resolve the issues submitted for supplemental relief, the arbitral panel did not reinterpret the Interim Award, correct the Interim Award, or address issues submitted in connection with but unresolved by the Interim Award.  Instead, the arbitral panel resolved the Purchaser's petition for supplemental relief by construing provisions of the Stock Purchase Agreement.

In any event, Offshore's argument that the Supplemental Interim Award was issued in violation of Article 30 is without merit because the arbitral panel determined that the Purchaser's

petition for supplemental relief was brought pursuant to Article 21.

The Second Circuit Court of Appeals has explained that parties must abide by an arbitral panel's reasonable interpretation of the rules governing arbitration when the parties have adopted rules conferring the authority to interpret the rules governing arbitration on the arbitral panel.  See Koch Oil, S.A. v. Transocean Gulf Oil Co., 751 F.2d 551, 554 (2d Cir. 1985); see also Reeves Bros. v. Capital-Mercury Shirt Corp., 962 F. Supp. 408, 411 (S.D.N.Y. 1997).  In that connection, when parties have adopted rules conferring on an arbitral panel authority to interpret the rules governing arbitration, courts should defer to the panel's interpretation of the rules governing arbitration.  I Appel Corp. v. Katz, No. 02cv8879, 2005 WL 2995387, at *6 (S.D.N.Y. Nov. 9, 2005), aff'd sub nom. Appel Corp. v. Katz, 217 F. App'x 3, 4 (2d Cir. 2007) (summary order) (district court "properly deferred" to arbitral panel's interpretation of its own rules because panel was vested with authority to interpret and apply its own rules).

In this case, the parties contracted to arbitrate under the ICDR Rules.  Article 36 of the ICDR Rules provides in relevant part that "[t]he tribunal shall interpret and apply [the ICDR] rules insofar as they relate to its power and duties."  ICDR Rules, art. 36.  This provision is in all material respects

34

identical to provisions that have been held to give an arbitral panel authority to interpret the rules governing arbitration. See, e.g., Reeves Bros, 962 F. Supp. at 411 (citing Koch Oil, 751 F.2d at 554).  Accordingly, the arbitral panel was vested with the authority to interpret and apply the rules governing the parties' arbitration.

The arbitral panel construed the Purchaser's petition for supplemental relief as a petition made pursuant to Article 21 of the ICDR rules.  (Supplemental Interim Award ¶ 3.)  It did so reasonably in light of the distinct issue submitted for resolution, and the distinct provisions of the Stock Purchase Agreement at issue.  Offshore is obligated to abide the arbitral panel's determination and this Court is bound to defer to it.[8] Koch Oil, 751 F.2d at 554; Appel Corp, 217 F. App'x at 4.

---

[8] Offshore relies on W. Emp'r Ins. Co. v. Jefferies & Co., 958 F.2d 258, 261 (9th Cir. 1992), to argue that, because the parties contracted for the ICDR rules, the arbitral panel exceeded its powers by disregarding the limitations in Article 30.  Offshore's reliance on Western Employer is misplaced.  In Western Employer, the court held that an arbitral panel had exceeded its powers by disregarding a provision in the parties' arbitration agreement.  Id. at 261-62.  Here, the parties' did not contract for any explicit limitation on their right to seek interim or supplemental relief from the arbitral panel.  Rather, the parties contracted for the ICDR rules, one of which empowers the arbitral panel to interpret the rules governing arbitration. When the arbitral panel construed the Purchaser's petition for supplemental relief under Article 21 rather than Article 30, it acted pursuant to ICDR rules for which the parties contracted. Accordingly, Western Employer is inapposite.

Accordingly, Offshore's motion to vacate the Supplemental
Interim Award under Section 10(a)(4) of the FAA because the
arbitral panel exceeded its powers is **denied.**

2.

Offshore also contends that the Supplemental Interim Award
should be vacated because the arbitral panel manifestly
disregarded controlling law when it determined that it had
jurisdiction to issue the award.

Under the manifest disregard standard, an arbitral award
may be vacated if the arbitrators are "fully aware of the
existence of a clearly defined governing legal principle, but
refuse to apply it, in effect, ignoring it." See Stolt-Nielsen,
548 F.3d at 96 (citation omitted), rev'd on other grounds, 559
U.S. 662 (2010); see also Schwartz v. Merrill Lynch & Co., 665
F.3d 444, 451-52 (2d Cir. 2011) (confirming the continued
validity of the "manifest disregard" standard).  The manifest
disregard standard is "severely limited, highly deferential, and
confined to those exceedingly rare instances of egregious
impropriety on the part of the arbitrators." Stolt-Nielsen, 548
F.3d at 95 (citation and internal quotation marks omitted).

To satisfy the "manifest disregard of the law" standard, a
party objecting to an arbitration decision must establish that
the law that was allegedly ignored was clear, that the law was

36

in fact improperly applied, leading to an erroneous outcome, and that the arbitrator knew of the law and intentionally disregarded it.  T.Co Metals, LLC v. Dempsey Pipe & Supply, Inc., 592 F.3d 329, 339 (2d Cir. 2010).  "[An] award should be enforced, despite a court's disagreement with it on the merits, if there is a barely colorable justification for the outcome reached."  Id. (citation and internal quotation marks omitted).  "With respect to contract interpretation, this standard essentially bars review of whether an arbitrator misconstrued a contract."  Id.; see also Phoenix Bulk Carriers, Ltd. v. Am. Metals Trading, LLP, No. 10cv2963, 2013 WL 5863608, at *5 (S.D.N.Y. Oct. 31, 2013).

Offshore contends that the arbitral panel manifestly disregarded New York law, which requires that contracts be interpreted to give effect to each contractual provision.  See, e.g., In re AMR Corp., 730 F.3d 88, 98 (2d Cir. 2013); Republic Nat'l Bank of N.Y. v. Olshin Woolen Co. Inc., 304 A.D.2d 401, 402 (App. Div. 2003).  According to Offshore, the arbitral panel manifestly disregarded this canon of construction because its application of the arbitration provision in the Stock Purchase Agreement to the dispute underlying the Supplemental Interim Award rendered the forum selection clause in the Escrow Agreement void.

This argument is without merit for the reason discussed in
Offshore I, namely, that the forum selection and arbitration
clauses can be read in a manner that permits the arbitration
clause to remain in effect.  986 F. Supp. 2d at --.  "The
arbitration clause prevails, and arbitration must be used, when
a dispute, such as the present one, relates to the Stock
Purchase Agreement, even if it implicates the Escrow
Agreement. . . .  If, on the other hand, a dispute concerned
only the escrow, it could be decided in litigation.  For
example, if the dispute was solely whether Morgan Stanley
breached its obligation under the Escrow Agreement, by making a
mistaken payment from the Escrow Amount, that dispute might be
pursued in litigation."  Offshore I, 986 F. Supp. 2d at --.

The arbitral panel's determination that the arbitration
clause controlled the parties present dispute, which concerns
whether under the Stock Purchase Agreement the Purchasers may
require that Offshore satisfy the Interim Award without drawing
from the Escrow Amount, did not render the forum selection
clause void.  Accordingly, Offshore's motion to vacate the
Supplemental Interim Award for manifest disregard of the law is
**denied.**

C.

Offshore also argues, in the alternative, that the Interim Arbitral Awards should be remanded to the arbitral panel because the Awards are incomplete.

In order to enable effective judicial review, courts may remand arbitral awards that are indefinite, incomplete, or ambiguous, for purposes of clarification.  See, e.g., Rich v. Spartis, 516 F.3d 75, 83 (2d Cir. 2008); Siegel v. Titan Indus. Corp., 779 F.2d 891, 894 (2d Cir. 1985); McQueen-Starling v. UnitedHealth Grp., Inc., 654 F. Supp. 2d 154, 168 (S.D.N.Y. 2009).

Offshore argues that the Interim Arbitral Awards are incomplete, and that remand is warranted, because the awards do not resolve whether Offshore may offset against the Escrow Amount an amount equal to any independent payment made to the Purchasers to satisfy the Interim Award.

This argument is without merit.  Offshore does not explain how its asserted right to an offset is in any way relevant to review of the Interim Arbitral Awards, which resolve whether Offshore is obliged to indemnify the Purchasers under Section 7.4(d) of the Stock Purchase Agreement, and whether Offshore may make indemnification payments from escrowed funds under the Stock Purchase and Escrow Agreements.  Whether Offshore will be entitled to an offset from the Escrow Amount after complying

with the Interim Arbitral Awards has no bearing on the issues presented by the Purchasers' petition to confirm the Interim Arbitral Awards.  Because the basis for the Interim Arbitral Awards, and the relief provided for in the Interim Arbitral Awards, is clear, remand to resolve potential consequences of compliance with the Interim Arbitral Awards is improper.

Offshore also argues that the Interim Arbitral Awards are incomplete because they do not resolve whether there is a discrepancy between the dispute resolution provisions in the Stock Purchase Agreement and Escrow Agreements.  This argument is also without merit.  The arbitral panel plainly considered, (Supplemental Interim Award ¶ 10), and ultimately rejected, (Supplemental Interim Award ¶ 14), Offshore's argument that a conflict between the dispute resolution provisions in the Stock Purchase Agreement and Escrow Agreement deprived the arbitral panel of jurisdiction to issue the Supplemental Interim Award.

Moreover, the arbitral panel reasonably concluded that the parties' dispute arose under the Stock Purchase Agreement, and determined that it had jurisdiction over the dispute pursuant to the broad arbitration clause in that agreement.  (Supplemental Interim Award ¶ 14.)  Because the basis for the arbitral panel's decision is clear, and because the panel plainly considered and rejected the arguments that Offshore claims the panel elided, Offshore's request for remand is **denied.**

40

**CONCLUSION**

The Court has considered all the remaining arguments of the parties.  To the extent not specifically addressed above, they are either moot or without merit.  For the foregoing reasons, the Purchasers' petition to confirm the Interim Award and Supplemental Interim Award is **granted**, and Offshore's cross-petition to vacate the Supplemental Interim Award is **denied. The Clerk is directed to enter a judgment in favor of the petitioners.  The clerk is also directed to close all pending motions and to close the case.**

**SO ORDERED.**

**Dated:        New York, New York**
**             September 10, 2014**                    /s/
                                      _____
                                           **John G. Koeltl**
                                   **United States District Judge**