```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
————————————————————————————————
ECOPETROL S.A., and KOREA NATIONAL
OIL CORPORATION,                              14-CV-529 (JGK)

     Petitioners,                             OPINION & ORDER

         - against –

OFFSHORE EXPLORATION AND PRODUCTION
LLC,

     Respondent.
————————————————————————————————
```

**JOHN G. KOELTL, District Judge:**

With an unsatisfied judgment against Respondent Offshore Exploration and Production, LLC ("Offshore"), Petitioner Ecopetrol S.A. ("Ecopetrol") moves, by order to show cause, for an order of contempt against Offshore and William M. Kallop, Offshore's principal. For the following reasons, the motion is **denied**.

I.

The Court has already set forth the facts and the procedural background of this case in its prior opinions, see Ecopetrol S.A. v. Offshore Expl. & Prod. LLC, 46 F. Supp. 3d 327 (S.D.N.Y. 2014); Offshore Exploration & Prod. LLC v. Morgan Stanley Private Bank, N.A., 986 F. Supp. 2d 308 (S.D.N.Y. 2013), familiarity with which is assumed. The following facts are included because of their relevance to this motion.

In 2009, Ecopetrol and Korea National Oil Corporation ("KNOC," collectively the "purchasers") purchased Offshore International Group, Inc. and its subsidiaries from Offshore. One of those subsidiaries, Savia Peru S.A. ("Savia"), was then facing Peruvian Value Added Tax ("VAT") assessments of around $75,000,000. Offshore, 46 F. Supp. 3d at 332, 335. The purchasers, through Savia, paid that amount to the Peruvian Government.

The purchasers then sought in arbitration reimbursement from Offshore for the VAT assessments that Savia had paid. On April 16, 2013, the arbitrators issued an "Interim Award" in the purchasers' favor, ordering Offshore to reimburse the Ecopetrol parties for the tax assessment by May 28, 2013. (Ware Aff. Ex. C, Ex. D.) On December 1, 2013, the arbitrators issued a "Supplemental Interim Award," which required Offshore to make the reimbursement to the purchasers from its own funds, rather than from an escrow account (the "financial escrow account") that had been created as security for indemnification claims by the purchasers against Offshore. (Ware Aff. Ex. D.) As of January, 31, 2016, the amount remaining in the financial escrow account was $102,359,191.02. (Pet'r's Letter, ECF No. 111-5.) The purchasers maintain that they have substantial claims against Offshore in excess of the amount of that escrow account.

2

On September 10, 2014, this Court confirmed the Interim Award and the Supplemental Interim Award. See Offshore, 46 F. Supp. 3d at 346. A Judgment (the "Judgment") confirming the awards was entered on September 12, 2014. (ECF No. 35.) The Second Circuit Court of Appeals subsequently affirmed the Judgment. Offshore Expl. & Prod., LLC v. Morgan Stanley Private Bank, N.A., 626 F. App'x 303, 308 (2d Cir. 2015) (summary order).

On May 15, 2015, about eight months after the Judgment was entered, Offshore received from Ecopetrol (1) a demand letter requesting one half of the Supplemental Interim Award. (Orta Decl. Ex. 1), (2) post-judgment interrogatories, (id. Ex. 10), and (3) a request for documents in aid of judgment and execution, (id. Ex. 11.) On May 29, 2015, Ecopetrol moved, by order to show cause, for the Court to hold Offshore and Kallop in civil contempt for their failure to comply with this Court's Judgment, entered in September, 2014.

Also on May 29, 2015, an arbitration panel issued a Partial Final Award that denied the purchasers' last remaining claim against Offshore concerning undisclosed environmental losses. (Orta Decl. Ex. 4 at 96-97.) Pursuant to the First Amendment to the Stock Purchase Agreement among Ecopetrol, Offshore, and KNOC, Offshore had deposited $50,000,000 in a second escrow account (the "supplemental escrow account") to be applied to

3

claims that resulted from undisclosed environmental losses. (Orta Decl. Ex. 5.)

In the same Partial Final Award, the arbitration panel required the purchasers to return to Offshore the reimbursements from the Peruvian Government for part of the VAT assessments. (Orta Decl. Ex. 4 at 95-96, ECF No. 60) As of February 26, 2016, the purchasers had received approximately $31 million in VAT reimbursements. (Resp't's Letter, ECF No. 110-8.) In addition, in August 2015, the purchasers accepted a payment of approximately $23 million from the supplemental escrow account to be split evenly between the purchasers. (Id.) The parties disagree on the outstanding judgment balance, which Offshore calculated to be $19,750,357 while the purchasers calculated to be $35,572,728.65. (Compare id. with Pet'r's Letter, ECF No. 111-5.) But there is no dispute that the original Judgment balance has been significantly reduced by the VAT reimbursement and the payment from the supplemental escrow account and that a significant amount remains unpaid.

On June 30, 2015, the Clerk of Court entered a certificate of default against Kallop. (ECF No. 73.) On July 10, 2015, Kallop moved to vacate the certificate of default. (ECF No. 86.) On July 13, 2015, the Court granted the motion and vacated the certificate of default. (ECF No. 87.) Kallop subsequently filed opposition papers against Ecopetrol's motion for contempt.

**II.**

**A.**

For its motion for contempt, Ecopetrol relies on Rule 70(e) of the Federal Rule of Civil Procedure, which provides a remedy of contempt if a party fails to comply with a judgment requiring the performance of a specific act.[1] Offshore objects that the Judgment was not an equitable judgment covered by Rule 70(e) but a judgment to pay money and that Ecopetrol's remedy should be limited to those provided by Federal Rule of Civil Procedure 69 which provides for remedies to enforce money judgments, in particular execution.

"Ordinarily, the equitable remedies provided under Rule 70 are not appropriate in enforcing a money judgment." Spain v. Mountanos, 690 F.2d 742, 744-5 (9th Cir. 1982); see also Combs v. Ryan's Coal Co., 785 F.2d 970, 980 (11th Cir. 1986); Gabovitch v. Lundy, 584 F.2d 559 (1st Cir. 1978). While Rule 69(a) states that process to enforce a judgment for the payment of money shall be a writ of execution, "unless the court directs

---

[1] Ecopetrol also relies in its order to show cause on 18 U.S.C. § 401(3) which provides that a federal court has the power to punish by contempt certain disobedience or resistance to its orders. However, that statute is the authority for criminal contempt and the remedy that Ecopetrol seeks here is civil contempt to compel compliance with the Judgment. This provision is therefore inapplicable in this case, and Ecopetrol acknowledged at the argument of the motion that the citation was incorrect.

otherwise," the otherwise clause should be read narrowly and limited to situations where well established principles warrant such use. Fed. R. Civ. P. 69(a); see Aetna Cas. & Sur. Co. v. Markarian, 114 F.3d 346, 349 (1st Cir. 1997) (citations and quotation marks omitted).

The Judgment in this case confirmed an interim arbitral award, which required Offshore to pay a sum certain to the petitioners within 30 days of the issuance of the award, and a supplemental award, which clarified that a payment from the indemnification escrow account would not satisfy the interim award. (Ware Aff. Ex. A, Ex. C., Ex. D.) "[T]he confirmation of an arbitration award . . . makes what is already a final arbitration award a judgment of the court." Florasynth, Inc. v. Pickholz, 750 F.2d 171, 176 (2d Cir. 1984). The substance of the award determines its proper characterization. See Jaffee v. United States, 592 F.2d 712, 715 (3d Cir. 1979) ("A plaintiff cannot transform a claim for damages into an equitable action by asking for an injunction that orders the payment of money."). The issue then becomes whether the substance of the award is a "money judgment" under Rule 69.

In the context of Rule 69, the Tenth Circuit Court of Appeals defined a money judgment as consisting of "two elements: (1) an identification of the parties for and against whom judgment is being entered, and (2) a definite and certain

designation of the amount which plaintiff is owed by defendant." Fox v. Nat'l Oilwell Varco, 602 F. App'x 449, 452 (10th Cir. 2015) (citing Ministry of Def. & Support for the Armed Forces of the Islamic Republic of Iran v. Cubic Def. Sys., Inc., 665 F.3d 1091, 1101 (9th Cir. 2011) (emphasis and internal quotation marks omitted)); see also Cubic, 665 F.3d at 1101 (defining the term "money judgment" for purposes of § 1961(a)); Penn Terra Ltd. v. Dep't of Envtl. Res., 733 F.2d 267, 275 (3d Cir. 1984) (defining the term "money judgment" for purposes of former Bankruptcy Code § 362(b)(5)).

It is plain that the Judgment in this case consists of these two elements. It clearly and unambiguously entered judgment for the purchasers against Offshore. See Offshore, 46 F. Supp. 3d at 337. The judgment granted was the total VAT tax paid by Savia that should have been paid by Offshore, which amounted to approximately $75,308,179.03. Id. Ecopetrol does not deny that the judgment in question consists of these two elements, but argues unpersuasively that it nevertheless is an equitable remedy enforceable by contempt.

"Almost invariably . . . suits seeking (whether by judgment, injunction, or declaration) to compel the defendant to pay a sum of money to the plaintiff are suits for 'money damages,' as that phrase has traditionally been applied, since they seek no more than compensation for loss resulting from the

7

defendant's breach of legal duty." Great-West Life & Annuity Ins. Co. v. Knudson, 534 U.S. 204, 210 (2002) (citations and quotation marks omitted) (alteration in original). This is particularly true when the claim arises under a contractual obligation to pay money, which is "quintessentially an action at law." See Id. (citing Wal-Mart Stores, Inc. v. Wells, 213 F.3d 398, 401 (7th Cir. 2000)). The interim award in this case enforced a provision of the Stock Purchase Agreement, and the claim sought nothing more than to compel the payment of money. The Judgment granting such a claim is a judgment for money damages and therefore fits squarely within the dictionary definition of a money judgment. See Black's Law Dictionary (9th ed. 2009) (defining a money judgment as "[a] judgment for damages subject to immediate execution, as distinguished from equitable or injunctive relief.").

Ecopetrol contends that because the judgment cannot be satisfied with funds from the indemnification escrow account, the judgment is an equitable decree. Contrary to Ecopetrol's contention, this requirement supports the conclusion that the judgment is a money judgment. A monetary recovery might be equitable, if it imposes "a constructive trust or equitable lien on *particular* property," or legal, if it imposes "personal liability for the benefits that [the petitioners] conferred upon respondents." Knudson, 534 U.S. at 214 (emphasis added); see

also <u>Sereboff v. Mid Atl. Med. Servs., Inc.</u>, 547 U.S. 356, 362 (2006). In this case, Ecopetrol and its subsidiary advanced VAT tax payments that under the Stock Purchase Agreement should have been paid by Offshore. If Ecopetrol sought recovery of its VAT payment by imposing a constructive trust or equitable lien on the escrow account that was established for indemnification purposes, then it may have been a closer question as to whether a judgment granting such relief would fall within the definition of a money judgment under Rule 69. However, by requesting that Offshore pay the amount it was required to pay and not use the specific asset of the escrow account, Ecopetrol was seeking a money judgment.

Ecopetrol also argues that the Judgment is not a money judgment because it was not intended to provide compensation for past injuries. It is true that an "important factor in identifying a proceeding as one to enforce a money judgment is whether the remedy would compensate for *past* wrongful acts resulting in injuries already suffered, or protect against potential *future* harm." <u>Penn Terra</u> 733 F.2d at 276-77 (emphasis in original). However, the Judgment grants reimbursement for past payments, rather than protecting against potential prospective harm. While Ecopetrol characterizes the arbitral award as the provision of "collateral security for the VAT claim," (Ecopetrol's Opp'n at 7, ECF No. 67,) the arbitral panel

9

characterized the relief sought by Ecopetrol as "an Order of Specific Performance obliging [Offshore] to reimburse Ecopetrol for certain [VAT payments] that [Savia] . . . was compelled to pay . . . for the years 2002 through 2007." (Ware Aff. Ex. C at 1.) The relief granted is therefore to compensate for past injuries which occurred between 2002 and 2007, and the payment of money suffices to satisfy the judgment. Cf. Penn Terra, 733 F.2d at 278. Ecopetrol's reliance on Constr. Tech., Inc. v. Cybermation, Inc., 965 F. Supp. 416 (S.D.N.Y. 1997) is therefore misplaced, because that case imposed a contempt sanction for the violation of the court's injunctive order to make payments into an escrow account.

Ecopetrol also contends that the Judgment is not a money judgment because it contains personal commands for performance of an act within a specified time period. Although it is true that a personal command may usually be enforced by contempt, a personal command to render payments may nevertheless fall within the meaning of a "money judgment" under Rule 69. See, e.g., Indus. Prof'l & Tech. Workers Int'l Union, SIUNA, AFL-CIO v. Worldtec Grp. Int'l, 25 F. App'x 527, 529 (9th Cir. 2001) (unpublished); Jou v. Adalian, No. CIV. 09-00226 (JMS), 2015 WL 477268, at *5 (D. Haw. Feb. 5, 2015) (holding contempt proceeding inappropriate to enforce the trial court's order requiring payment of a sum certain within seven days).

In cases where contempt is appropriately imposed for the violation of courts' orders to render payment, the reliefs are usually the kinds that are traditionally available in equity, see, e.g., Tauro v. Allegheny Cty., 371 F. App'x 345, 348 (3d Cir. 2010) (per curiam) (child support); Donovan v. Sovereign Sec., Ltd., 726 F.2d 55 (2d Cir. 1984) (back pay pursuant to section 17 of the Fair Labor Standards Act); S.E.C. v. Zubkis, No. 97-CV-8086 (JGK), 2003 WL 22118978, at *7 (S.D.N.Y. Sept. 11, 2003) (disgorgement), or those arising under a statutory scheme that implements an important national policy, see, e.g., Pierce v. Vision Investments, Inc., 779 F.2d 302, 308 (5th Cir. 1986) (Interstate Land Sales Full Disclosure Act); Donovan v. Mazzola, 716 F.2d 1226, 1239 & n. 9 (9th Cir. 1983) (Employee Retirement Income Security Act); Hodgson v. Hotard, 436 F.2d 1110, 1114 (5th Cir. 1971) (Fair Labor Standards Act), or the court's sanctions for misconduct. See, e.g., Cleveland Hair Clinic, Inc. v. Puig, 106 F.3d 165, 166 (7th Cir. 1997); SD Prot., Inc. v. Del Rio, 587 F. Supp. 2d 429, 434-36 (E.D.N.Y. 2008). The Judgment in this case, enforcing an arbitral award assessing damages for a breach of contract claim between private parties, cannot fit in any of these categories, and is no more than an ordinary money judgment under Rule 69.

Because the Judgment in this case is an ordinary money judgment, and because contempt power should not be used to

enforce a money judgment, Ecopetrol's motions against Offshore and Kallop should be denied for this reason alone. See Fed. R. Civ. P. 69(a)(1); Markarian, 114 F.3d at 349-50.

**B.**

In addition, the Court, in the exercise of its discretion, would decline to issue a finding of contempt against Offshore at this time. Civil contempt is a "potent weapon," which courts should not employ "where there is a fair ground of doubt as to the wrongfulness of the defendant's conduct." King v. Allied Vision, 65 F.3d 1051, 1058 (2d Cir. 1995) (internal quotation marks omitted). The decision as to whether civil contempt sanctions should issue is within the Court's discretion. Perez v. Danbury Hosp., 347 F.3d 419, 423 (2d Cir. 2003). Even with this discretion, a "district court's contempt power is narrowly circumscribed," id., and "the court must not lightly invoke its contempt power." In re Att'y Gen. of U. S., 596 F.2d 58, 65 (2d Cir. 1979).

"A court's inherent power to hold a party in civil contempt may be exercised only when (1) the order the party allegedly failed to comply with is clear and unambiguous, (2) the proof of noncompliance is clear and convincing, and (3) the party has not diligently attempted in a reasonable manner to comply." N.Y.

State Nat. Org. for Women v. Terry, 886 F.2d 1339, 1351 (2d Cir. 1989).

Here, the Court's judgment confirming the arbitration awards that required payment by Offshore to the purchasers is clear and unambiguous, and equally clear is the fact that more than one year after the judgment, Ecopetrol still had not received from Offshore the payment required by the court's judgment. However, discretion would indicate that civil contempt sanctions should not issue. Ecopetrol should be able to enforce the judgment through execution on the Judgment — and Ecopetrol has made no effort to show that such efforts would be ineffective. Indeed, Ecopetrol waited eight months – from September 2014 to May 2015 – to begin discovery in aid of execution and filed an Order to Show Cause for Contempt that very same month. After the contempt motion was fully briefed, Ecopetrol sent a letter demanding full payment of the Judgment on October 28, 2015. (ECF No. 111-5.) Since then, for another five months, the petitioner has made no efforts to execute on the Judgment with the tools and remedies provided for execution. Ecopetrol has provided no reasonable explanation for its inaction. At the argument of the current motion, Ecopetrol explained that it had not pursued execution because creditors' remedies are "expensive and complicated." Plainly, Ecopetrol has not pursued the lawful remedies available to it and the potent

13

weapon of contempt should not be used just because Ecopetrol feels that execution is too much trouble.

Moreover, Offshore has made some efforts to comply with the Judgment. Both parties appear to agree that, other than the escrow accounts, Offshore's assets are largely illiquid. (Tr. at 19, 22, ECF No. 88.) According to Offshore, the liquidation of these assets "would not be easily accomplished, would require considerable time, and would likely result in substantially compromised valuation of the assets." (Kallop Aff., ECF No. 85.) Given its limited liquid assets, Offshore appears to have made some reasonable efforts to comply with the Judgment. The parties agree that the Judgment has been substantially reduced by payments from the supplemental escrow account and from the VAT reimbursements.

In the exercise of discretion, the Court would decline to impose civil contempt sanctions at this time.

### c.

Ecopetrol seeks to hold Kallop, Offshore's principal, in contempt by making him responsible for Offshore's failure to comply with the Judgment. Ecopetrol relies on Rule 65(d)(2) of the Federal Rule of Civil Procedure which provides that an injunction binds not only the parties but also "the parties' officers, agents, servants, employees, and attorneys," who

receive actual notice of the injunction. Fed. R. Civ. P. 65(d)(2)(B). Rule 65 applies to "injunctions and restraining orders," and more broadly, to an "equitable decree compelling obedience under the threat of contempt." Int'l Longshoremen's Ass'n v. Phila. Marine Trade Ass'n, 389 U.S. 64, 75-76 (1967). A permanent injunction, through the automatic operation of Rule 65(d)(2), may bind a non-party who is in active concert or participation with the parties. See, e.g., NML Capital, Ltd. V. Republic of Argentina, 727 F.3d 230, 239 (2d Cir. 2013); Brock v. Casey Truck Sales, Inc., 839 F.2d 872, 874 n.1 (2d Cir. 1988). However, as explained above, the Judgment in this case is a money judgment under Rule 69 and is not an injunction enforceable through contempt. Therefore, Ecopetrol cannot use Rule 65 to create a remedy against Kallop.

Ecopetrol also argues that Kallop should be held in contempt for Offshore's alleged preferential payment of certain debts guaranteed by or associated with Kallop personally, and for the alleged improper uses of Offshore's assets by Kallop and his family for personal purposes. (Ecopetrol's Reply, ECF No. 98.) The theory is that Kallop has diverted funds away from Offshore and thus prevented Offshore from complying with the Court's Judgment.

Some courts have held that a corporate officer's "attempts to drain the corporate resources to avoid satisfying the court's

15

order" may be punished by contempt. See Elec. Workers Pension Trust Fund of Local Union # 58, IBEW v. Gary's Elec. Serv. Co., 340 F.3d 373, 384 (6th Cir. 2003). However, this is only relevant where the contemnor attempts to excuse noncompliance by his inability to comply. Courts have held that bad faith behavior by the corporate officer to induce the inability of the corporation to comply would defeat the inability defense to contempt, and the corporate officer, with his defense defeated, may be held in contempt for his failure to direct his corporation's compliance with the original order. See, e.g., id.; Chicago Truck Drivers v. Bhd. Labor Leasing, 207 F.3d 500, 507-08 (8th Cir. 2000). However, the Judgment in this case is a money judgment that is not enforceable by contempt, and there is no need for Offshore to establish an inability defense. It is therefore unnecessary to consider whether Kallop has caused this alleged inability.

Moreover, for the same reasons that the Court would not exercise any discretion to hold Offshore in contempt for not paying the Judgment, the Court would not hold Kallop in contempt for not causing Offshore to pay the Judgment. Ecopetrol has ample civil remedies to execute on the Judgment and to pursue discovery to find Offshore's assets and to execute on them.

**CONCLUSION**

The Court has considered all of the arguments raised by the parties. To the extent not specifically addressed above, they are either moot or without merit. For the foregoing reasons, Ecopetrol's motion, by order to show cause, to hold Offshore and Kallop in contempt is **denied**. The Clerk is directed to close all pending motions in this case.

**SO ORDERED.**

**Dated:    New York, New York**
**         March 28, 2016**                  _____/s/_____
                                             **John G. Koeltl**
                                       **United States District Judge**